[Nos. 19907, 19908.   Department Two.   August 25, 1926.]

CAROLINE KLITTEN, *Appellant,* v. AMERICAN SECURITY
BANK OF KENNEWICK *et al., Respondents.*
CAROLINE KLITTEN, *Appellant,* v. AMERICAN SECURITY
BANK OF KENNEWICK, *et al., Respondents.*[1]

[1] CORPORATIONS (128)—OFFICERS AND AGENTS—DEALINGS WITH
CORPORATIONS—FRAUD. Findings that a stockholder and officer of
a corporation, which was, in a precarious condition and under
the necessity of making an assessment upon its stockholders,
purchased the stock of owners who were unable to pay their
assessments, for a valuable consideration and without fraud,
are sustained by evidence that she was fully familiar with all
the conditions.

[2] SAME (128). Findings that a stockholder and officer of a bank,
in a precarious condition and under demand of the supervisor of
banking to replace impaired security, was not fraudulently in-
duced to buy one-half of the impaired assets at the purchase
price of $30,000, are sustained where it appears that such assets
had some substantial value, that she was familiar with all the
conditions, and that the continuation of the bank as a going
concern was abundant consideration for the execution of a note
for her half of the assets purchased.

Appeals from judgments of the superior court for
Benton county, Jeffers, J., entered November 25, 1925,
upon findings in favor of the defendants, in actions for
the rescission of contracts, tried to the court. Affirmed.

*E. O. Connor* and *C. E. H. Maloy,* for appellant.

*Samuel P. Weaver* (*Ross C. Fisher,* of counsel), for
respondents.

PARKER, J.—These have been companion cases since
their beginning, having been commenced in the su-
perior court for Benton county on the same day and
having been tried together in that court, though each
finally disposed of therein by separate judgments; and,

[1]Reported in 248 Pac. 435.

while brought here separately as to their pleadings and judgments, by separate appeals prosecuted by the plaintiff Mrs. Klitten, have been presented to us with one statement of facts and one set of briefs filed in support of both appeals.

In the first case, numbered 4197 in the superior court and 19907 in this court, appellant seeks a money judgment of $1,650 against the bank as the amount paid by her for the purchase of thirty-three shares of its capital stock, which purchase she claims she was induced to make as the result of fraud and deceit practiced upon her by its officers. She tendered the shares of stock to the bank. It does not clearly appear from whom she actually purchased them. However, it was to the interest of the bank that she become the owner of the shares, as will presently appear. The bank's defense in this first case is negative in character.

In the second case, numbered 4198 in the superior court and 19908 in this court, appellant seeks a judgment canceling a $15,000 promissory note executed and delivered by her to the bank, which she claims she was induced to so execute and deliver as the result of fraud and deceit practiced upon her by its officers; and also that it was so executed and delivered without consideration, or rather that there was a failure of consideration. In this second case, appellant also seeks a money judgment of $2,000 against the bank, rested upon her claim that the bank wrongfully appropriated from her deposit account that sum and assumed to apply it towards the payment of the $15,000 note. The bank's defense in this second case is also negative in character, but, by way of cross-complaint, it seeks as against appellant a money judgment of $13,000 and interest thereon as the balance due upon the $15,000 note executed and delivered to it by appellant.

Upon these issues, by consent of all parties, the two cases proceeded to trial together in the superior court.

After the conclusion of the trial and while the cases were still held under advisement by the trial judge, the bank and its affairs passed into the hands of H. C. Johnson, as state supervisor of banking, for liquidation because of its insolvency. Thereafter he was, by orders of the superior court, made a party defendant in each case. Thereafter, on November 23, 1925, final judgment of the trial court was rendered in the first action denying to appellant any relief prayed for by her therein; and on the same day final judgment of the trial court was rendered in the second case denying to appellant any relief prayed for by her therein, and awarding to the bank and supervisor of banking representing it recovery against appellant in the sum of $13,694.45, being the balance due upon the $15,000 note with interest. These are the judgments brought here by appellant's appeals.

As we view the records of these cases and the arguments of counsel made in behalf of the respective parties, there seems to us to be little else than questions of fact calling for our serious consideration. Appellant is a woman of large experience in business. She was one of the organizers of respondent bank, and was, during a few years prior to January, 1920, its cashier, performing the usual duties of such office, her husband being then its president. She had other banking experience in other banks prior thereto, commencing about 1898. She has, at all times since the organization of respondent bank, been the owner of shares of its capital stock. She has lived at Kennewick during the past twenty-three years and is apparently well acquainted with business conditions there.

Appellant's husband died in February, 1924, prior to which time in January, 1924, he had signed a paper,

with others interested in respondent bank, rendering himself liable to the Old National Bank of Spokane as guarantor, to secure payment of certain notes or securities held by that bank as collateral to indebtedness owing to it by respondent bank.

In August, 1924, it became apparent that the affairs of respondent bank were in a precarious condition, and, in order to save it from insolvency, it was necessary that its resources be augmented by increased capital. To that end, an assessment was levied against its capital stock. There were ninety-nine shares of its capital stock held by owners who were not able to pay the assessment; so it was agreed between Arnold, Garber and other officers of the bank and appellant that she should buy thirty-three of those shares and that Arnold and Garber would buy the other sixty-six of those shares, or, in any event, that Arnold and Garber would pay the assessment against the sixty-six shares. Appellant accordingly bought the thirty-three shares, paying therefor, including the assessment thereon, $1,650. Whether or not Arnold and Garber actually bought the sixty-six shares is in dispute, but it is plain, in any event, that they paid the assessment thereon. We assume that assessment on other shares was paid by the respective owners. Thus the bank was put upon what was then thought to be a sound basis.

Appellant insists that a part of the consideration for her purchasing the thirty-three shares was that Arnold, Garber and the other officers of respondent bank should cause her husband's estate to be released from the guaranty given by him, with others, to the Old National Bank. Arnold, Garber and the other officers of respondent bank who had signed that guaranty with appellant's husband did sign and give to appellant a paper which, in terms, purported to release her hus-

band's estate from the obligation of that guaranty, but the evidence plainly shows that this document was, in substance, only a consent of those jointly liable with her husband that the Old National Bank might release her husband's estate without waiving its rights against them as his co-guarantors. It did not purport to promise to secure such release from the Old National Bank. That bank, after some negotiations with appellant looking to the releasing of the guaranty obligation of her husband's estate *pro tanto,* which negotiations failed, refused to release appellant's husband's estate.

[1] As to the first case, we have the disputed questions of fact which, if decided against appellant, must result in her failure to recover therein: (1) As to whether or not Arnold, Garber and the other officers of the respondent bank agreed to procure from the Old National Bank a release of appellant's husband's estate from the obligation of that guaranty; and (2) as to whether or not Arnold and Garber agreed to actually purchase the sixty-six shares of stock as well as pay the assessment thereon. The evidence, we think, clearly supports the view which the trial court evidently entertained, that Arnold, Garber and the other officers of the bank did all that they agreed to do, both as to looking to the release of appellant's husband's estate from the guaranty given to the Old National Bank and with respect to the assessment on the sixty-six shares of stock. We think it is wholly unnecessary for us to review in this opinion the voluminous evidence touching these questions. We may add that the evidence shows that, in appellant's purchase of the thirty-three shares and in Arnold's and Garber's payment of the assessment on the sixty-six shares, appellant, as well as all others, was moved thereto mainly by their desire to save respondent bank from insolvency, they

all being financially interested in maintaining its solvency. Plainly, we think, the judgment rendered in the first action, denying appellant relief therein prayed for, must be affirmed.

[2] In October, 1924, it again became apparent that the affairs of respondent bank were in a precarious condition, and that in order to then save it from insolvency it became necessary that $30,000 of its assets, consisting of loans evidenced by notes and judgments deemed questionable of collection, must be replaced by liquid assets. This was demanded by the supervisor of banking. Again, manifestly, looking to the saving of the bank from insolvency, and, manifestly, both being moved by that consideration, appellant and Arnold entered into an agreement to jointly purchase the $30,000 of respondent bank's impaired assets, required by the supervisor of banking to be replaced by liquid assets, each to pay one-half of the agreed purchase price thereof by executing and delivering to the bank a promissory note for $15,000. This was accordingly done, the note so executed by appellant being the one here in question and upon which the judgment against her was rendered in the second case. It was agreed that the assets so purchased by appellant and Arnold should remain in the bank for collection, both having equal right of access thereto to aid in such collection. Thereafter in September, 1925, respondent bank finally, because of its then insolvency, was taken charge of by the supervisor of banking, looking to the liquidation of its affairs, as we have already noticed.

As to the second case, we have disputed questions of fact which, if decided against appellant, must result in her failing to recover therein, and in the awarding of recovery against her for the balance due upon her $15,000 note. It is contended, in behalf of ap-

pellant, that fraud and deceit were practiced upon her by Arnold and the other officers of the bank in inducing her to execute and deliver to the bank the $15,000 note as half of the purchase price of the $30,000 impaired assets turned over to her and Arnold, in that those assets were practically worthless and that she was, by Arnold and the other officers of the bank, led to believe that they were of substantial value. That those assets were in fact of some substantial value, though worth much less than $30,000, facts that were then well known to appellant, we think is well established by the evidence. Appellant further contends in this connection that, because of the nearly wholly worthlessness of those assets, there was such a substantial failure of consideration for the execution by her of the $15,000 note as to entitle her to cancellation of the note, she tendering to the bank her interests in the assets. This contention must fail, since it is plain that even the considerably less than par value of the purchased assets, with the securing of the continuation of the bank as a going concern, was abundant consideration for her execution of the note. We think it wholly unnecessary for us to review in this opinion the voluminous evidence touching these questions. Plainly, we think, the judgment rendered in the second case denying appellant the relief prayed for by her therein, and awarding judgment against her upon the balance due upon her $15,000 note, must be affirmed.

. In disposing of these two cases we have not seriously considered the superior rights of the supervisor of banking as the representative of the creditors of respondent insolvent bank, over the rights of the bank as a going concern. A consideration of the supervisor's rights in behalf of the bank's creditors would add additional support to the view that the judgments here in question must be affirmed. Our decisions in

*Moore v. Kildall,* 111 Wash. 504, 191 Pac. 394, and *Duke v. Johnson,* 123 Wash. 43, 211 Pac. 710, and the decisions of other courts which might be cited, lend support to this view.

The judgments rendered in both cases are in all things affirmed.

TOLMAN, C. J., MACKINTOSH, MITCHELL, and ASKREN, JJ., concur.