[No. 22365. Department Two. January 16, 1931.]

E. F. BLAINE, *Appellant*, v. L. H. DARWIN *et al.*,
*Respondents.*

ARTHUR LEWIS *et al.*, *Appellants*, v. L. H. DARWIN *et al.*,
*Respondents.*[1]

[1]Reported in 295 Pac. 131.

*Hyland, Elvidge & Alvord* and *Tucker & Tucker,* for appellants.

*Wm. H. Pemberton, Frank W. Bixby* and *Gomer Thomas,* for respondents.

FULLERTON, J.—In this action, the appellant, E. F. Blaine, sought to recover against the respondents, L. H. Darwin and Katherine Darwin, his wife, upon a promissory note. There was a trial by jury and a verdict returned in favor of the defendants, on which a judgment of dismissal with prejudice was entered.

The complaint was in form that usual in such cases. It was alleged therein that on July 5, 1918, one Arthur V. Watts, for a valuable consideration, executed and delivered his promissory note to the respondent L. H. Darwin for the sum of two hundred dollars, payable on demand, and that Darwin, for a like consideration, indorsed and delivered the note to the appellant, Blaine, who was the owner and holder thereof. It was further alleged that no part of the note had been paid, and that the obligation thereby created was the community obligation of L. H. Darwin and his wife, Katherine Darwin.

The respondents, by their second amended answer, admitted the execution and delivery of the note to Darwin by Watts, and its indorsement and delivery to the appellant, but denied all other allegations of the complaint. As a further answer to the complaint, the

respondents set up two affirmative defenses. The first, the only one we find it necessary to notice, was stated in the following language:

"I. That on the 29th day of June, 1918, one Ernest Lister was Governor of the State of Washington and the plaintiff was a member of the Public Service Commission of said State; that the said Arthur V. Watts was editing and publishing two newspapers in the State of Washington, one at Port Angeles and one at Bellingham, which were supporting the policies of Governor Lister and were known by said Governor and plaintiff to have considerable influence politically; that at said time said Governor and the plaintiff herein had political ambitions and were anxious to enlist and keep the political support of said newspapers.

"II. That the said Arthur V. Watts was then in financial difficulties and it was doubtful whether he, the said Arthur V. Watts, would be able to continue to edit and publish said papers, all of which facts were well known to the Governor; that the plaintiff, in order to further his own political ambitions and to assist said Governor in obtaining for him the political support of said newspapers, conceived the plan of loaning said Arthur V. Watts the sum of $400.00—$200.00 to be advanced by plaintiff and $100.00 each by Arthur Lewis and F. M. Spinning, two other members of said Commission—and enlisted the offices of the said L. H. Darwin as agent or go-between to advise said Governor of their said plan and to negotiate with said Arthur V. Watts in placing said loan and enabling said Watts to continue to publish said newspapers; it further being the intention of said members of said Public Service Commission that they would take notes to evidence said loans, and that in the event the said Arthur V. Watts should edit and publish said newspapers and in that way support the policies of Governor Lister during the 1918 campaign, said notes should be considered paid and no part of said loan should ever be repaid to them, or any of them; that said L. H. Darwin, at the instance and request of said members of said Public Service Commission, and without any remuneration whatever therefor, and without promise or hope of any

remuneration therefor, advised said Governor of said plan, obtained his approval thereof, and negotiated said loan to said Arthur V. Watts on said understanding and pursuant to said plan; that said money was loaned to said Arthur V. Watts pursuant thereto and the notes given by said Arthur V. Watts were given pursuant to said agreement, and the note sued upon herein is one of such notes.

"III. That said Arthur V. Watts forwarded said notes by mail to said L. H. Darwin, who without any consideration whatsoever indorsed and delivered the note sued upon to the plaintiff herein; that after giving said note or notes, Arthur V. Watts continued to edit said papers and, through the columns thereof, supported the policies of Governor Lister during the 1918 campaign; that, under said agreement, such support and service were to be received in full payment for said notes and the same were to be returned to said Arthur V. Watts; that said notes were thereby discharged and should have been returned to said Arthur V. Watts; that the plaintiff herein had full knowledge of the terms under which said note was received."

The appellant interposed a demurrer to the affirmative defense, and at the trial objected to the introduction of any evidence in support thereof. The demurrer and objection were overruled by the trial court, and these rulings furnish the basis for the first of the errors assigned. It is argued that to permit the defense to stand, and to admit evidence in its support, is to violate the parol evidence rule; that it is to allow a contemporaneous parol agreement to vary the terms of a written instrument.

But we think the objection mistakes the purpose and effect of the pleading and the evidence. It is the rule, no doubt, that a written promise to pay money, founded upon a sufficient consideration, cannot be varied by showing a prior or a contemporaneous parol agreement that the promise was not to be obligatory, or was to be performed in a different way or in a different

manner than that provided in the writing. But this hardly meets the situation as presented in the instance before us.

In this instance, the substance of the pleading is, that the maker of the note was in a situation to perform a service which the payee of the note desired to have performed, and for the performance of which he was willing to pay the sum named in the note; that the maker of the note could not perform, unless the agreed consideration was paid to him in advance; and that the payee was willing to pay in advance, if he could be assured that the service would be performed; and that the note was taken with the understanding and agreement that it was to be deemed paid by such performance, and to be a valid obligation only in the case of a non-performance; and that the service was performed in accordance with the terms of the agreement.

But the agreement was left to rest in parol, and the real question is, Can it be shown as a defense to an action brought upon the note? It is our opinion that it can be so shown. The note was not delivered as a final obligation of the maker, to be paid to the maker at all events and according to its terms, but was rather delivered as a pledge, to secure the performance of a more general agreement, of which the giving of the note formed only a part. In other words, the delivery was conditional, not absolute, and, whatever may be the rule elsewhere, it is the rule in this jurisdiction that parol evidence is admissible to show that a note, absolute in form, though manually delivered to the payee, is not to become a binding obligation except upon the happening of a certain event. *Johnson v. McCart,* 24 Wash. 19, 63 Pac. 1121; *Ewell v. Turney,* 39 Wash. 615, 81 Pac. 1047; *Seattle Nat. Bank v. Becker,* 74 Wash. 431, 133 Pac. 613; *Gwinn v. Ford,* 85 Wash. 571, 148

Pac. 891; *Post v. Tamm*, 91 Wash. 504, 158 Pac. 91; *Dickson v. Protzman*, 123 Wash. 247, 212 Pac. 249.

The rule, of course, presupposes that the controversy is between the original parties to the note, or between one of the original parties and an indorsee of the note, taking with knowledge of the conditions upon which it was delivered. A negotiable promissory note, in the hands of innocent holder for value, has a sanctity not accorded to the ordinary written instrument, but the sanctity extends to such holders only. As between the maker and payee thereof, or as between the maker and one holding with notice of the conditions under which it was executed, it is subject to the rules applicable to ordinary written contracts.

There is another principle applicable to the facts of the particular case, aside from the one just noticed, which permits the contract pleaded to be shown. The principle is that the parol evidence rule does not prevent the maker of a note from showing that, by the terms of a collateral parol agreement, the note was to be satisfied by the performance of a service, and that the service was fully performed. As said by the supreme court of Indiana in *Collins v. Stanfield,* 139 Ind. 184, 38 N. E. 1091.

"The lower court sustained a demurrer to this answer, and that ruling presents the only question made by the record. The sufficiency of the answer is attacked upon two grounds; first, that it sets up a contemporaneous parol agreement, varying the terms of the written contract, and, second, that the facts pleaded constitute the appellee a surety for a debt owing by her husband.

"Of the first proposition, there can be no possible doubt as to the rule urged, but in the application of the rule, if it appear that the terms of the collateral, oral agreement have been performed on the one side, and their fruits accepted by the other, such executed agreement is taken as a payment or satisfaction of the

written obligation. *Tucker v. Tucker*, 113 Ind. 272; *Zimmerman v. Adee*, 126 Ind. 15.

"The rule urged by the appellee does not exclude oral agreements made and performed subsequently to the execution of the written contract; and prior or contemporaneous agreements, fully executed after the making of the written contract, become, by their fulfillment, subsequent agreements. If it were otherwise, the rule, itself intended as a shield against fraud, would become an instrument of fraud."

See, also, *Paige v. Carter*, 64 Cal. 489, 2 Pac. 260; *Schultz v. Noble*, 77 Cal. 79.

The answer here interposed may partake of the nature of an equitable defense. But this is permissible under our practice, where equity and law are administered by the same tribunal. Manifestly, it would seem, under no equitable principle should the showing be excluded. Its effect would be to cause the maker of the note to pay it twice; once by the performance of the service he agreed to perform, and again by a payment in money in accordance with its literal terms. This, to paraphrase the language of the Indiana court, would be to allow a rule, intended to prevent fraud, to become an instrument of fraud.

The next contention is that the evidence does not justify the verdict of the jury. The direct evidence rested upon the testimony of the respondent L. H. Darwin on the one side and the appellant, Blaine, supported by Spinning, a then member of the Public Service Commmission, on the other. Watts, the maker of the note, could not be reached. Governor Lister had departed this life. Lewis, the other member of the Public Service Commission, who was present when the contract was purported to have been made, did not testify either in person or by deposition, although it was shown that he was a resident of the state. The

evidence of the respective parties was flatly contradictory.

This ordinarily would present a question for the jury, and not the court, but the appellant argues that the testimony of Darwin was so far unreasonable, and so far contrary to the ordinary experience of men, as to be unbelievable, and that the court, as matter of law, should have withdrawn his evidence from the jury. But we cannot so view it. Nor do we think it necessary to review the evidence in detail. The transaction, it may be conceded, has in it some aspects which seem to be somewhat strange, when the character and standing of the parties involved are considered; but we cannot think that all of its strangeness is in the story as told by the respondent Darwin. The evidence, as we view it, presented a question of fact for the jury, rather than one of law for the court. The verdict of the jury is, therefore, conclusive of the question.

The appellant assigns a number of errors which, he contends, entitle him to a new trial. In the first of these, he complains of misconduct on the part of the trial judge. He contends that the judge's attitude towards his counsel was so far critical and discourteous as to prejudice his case in the minds of the jury and prevent him from having a fair trial. The appellant cites a number of such instances in his brief, and, to read them apart from the record itself, they seem to support the contention. But to read them in connection with the record, they lose much of their virulence.

The trial was somewhat prolonged. To much of the evidence offered in support of the defense, strenuous objections were interposed, giving rise to arguments between opposing counsel, and the trial judge endeavored to reduce these to a minimum so that the trial could proceed more speedily. His criticisms were

directed mainly to both counsel, not particularly to the counsel for the appellant. Indeed, at one stage of the proceedings, the respondent's counsel, who had been taking the active lead in the trial, asked and obtained leave of the court to turn the conduct of the respondent's side of the case to his co-counsel, who thereupon assumed the burden. Before a case is reversed on this ground, it ought to be clear that a mistrial resulted because of it, and we cannot conceive that the matters here complained of entered into or influenced the verdict of the jury.

The appellant next complains that the court improperly excluded material evidence offered on his behalf. As we have noted, the answer on which the case was tried was a second amended answer. The two prior answers stated the defense sought to be interposed in somewhat different language than it was stated in the latter answer, language which, the appellant thought, contradicted the testimony given at the trial by Darwin. The proffered pleadings, the court rejected, but allowed the appellant to read to the jury the parts of the answers which he thought bore upon the question, and to show that both answers were verified by Darwin. Obviously, the pleadings were admissible for the purpose for which they were offered, but, as the court allowed all that was material in them to be put before the jury in another form, it is difficult to see wherein the appellant was prejudiced.

The appellant further complains of the instructions of the court to the jury. To the first of the instructions, it is objected that it does not correctly reflect the testimony of the appellant. In the instruction, the jury were told that, if they found that Darwin solicited a loan from the appellant and his associates for Watts, and that the loan was refused unless Darwin would obligate himself to repay the loan by becoming

a maker of the note or a surety thereon, and that Darwin accepted the conditions, and that the note in suit was the result of his performance of the conditions, then Darwin was liable thereon, unless it was found that the note was paid. The more precise objection is that the agreement was not as stated by the court, but "was that they would loan to Darwin if he wanted it, and he could do as he pleased with the money." But the appellant did not, in his complaint, declare on an independent contract with Darwin. He declared upon the note, and sought to hold Darwin as an indorser thereon. Clearly, we think the instruction was within the issues as made by the pleadings, and is not erroneous for the reason urged. Moreover, had the plaintiff sued Darwin, alleging a loan to him personally, the statute of limitations would have been a complete defense. The contract evidenced by the note was necessary to prolong the statute, and he could hardly declare upon the contract as evidenced by the note, and recover upon another and entirely different contract. He is bound by the issues as he made them.

To the second of the instructions it is objected that it is based upon a superseded affirmative answer, not upon the affirmative answer on which the cause was tried. But we do not so read it. In stating the issue, the language of the second amended answer was closely followed. It is true that Darwin, in his testimony, was uncertain as to the source from which he first learned that Watts was desirous of a loan. But this was not a material circumstance. His testimony supported the substance of the issue, and was sufficient to warrant the instruction given.

The remaining instructions to which exceptions were taken, whether correct or incorrect, have no pertinency in the light of the verdict of the jury. They relate to the liability of the community composed of Darwin and

his wife, and could be pertinent only in the case the jury found against the contentions of Darwin on the principal issue.

We find no error in the record warranting a reversal, and the judgment will stand affirmed.

HOLCOMB, MAIN, and MITCHELL, JJ., concur.