[No. 22607. Department Two. February 25, 1931.]

WHITMAN REALTY & INVESTMENT COMPANY, *Respondent*, v. J. W. DAY, *Appellant*.[1]

[1]Reported in 296 Pac. 171.

*R. L. Campbell,* for appellant.

*Glenn E. Cunningham* and *Hanna, Hanna & Wilkinson,* for respondent.

BEELER, J.—Plaintiff brought this suit to recover the balance due on a promissory note, dated May 2, 1924, executed and delivered by the defendant Day, payable six months after date to the order of the Farmers National Bank of Colfax, which, after maturity and for a valuable consideration, it endorsed and delivered to plaintiff. The complaint is in the usual form. Defendant, in his answer, admitted the execution and delivery of the note, and set up three affirmative defenses; fraud and duress, want of consideration, and a collateral oral contemporaneous agreement. Plaintiff, in its reply, denied all affirmative allegations.

The cause was tried to the court and jury, and, at the conclusion of the introduction of testimony, plaintiff challenged its legal sufficiency to sustain the affirmative defenses, which motion the court sustained. Thereafter defendant moved for a new trial, which was denied, and judgment entered in favor of the plaintiff. The defendant has appealed.

Inasmuch as the trial court withdrew the case from the jury, only those facts will be stated which are supported by appellant's evidence. No reference will be made to the evidence offered by respondent.

Appellant was one of the organizers and a stockholder of the Farmers National Bank of Colfax, capitalized at $100,000, divided into one thousand shares of the par value of one hundred dollars each, of which appellant owned forty shares. For many years he was personally acquainted with Mr. Miller, the bank's

vice-president, and was quite familiar with the affairs of the bank. Appellant had been engaged in business in Colfax for about eighteen years, and, thereafter, moved to Spokane, where he engaged in business for approximately twenty-four years immediately prior to the time this suit was brought.

Previous to April 4, 1923, the state supervisor of banking discovered that the bank had approximately $45,000 of assets consisting of collectible notes of very doubtful value, and demanded of the bank officials that these notes be charged off its books and be replaced by liquid assets. Shortly thereafter, Mr. Miller interviewed appellant at Spokane, and advised him of the action taken by the bank examiner, informing him that an assessment of forty-five per cent had been levied against all stock of the bank in order to raise $45,000, the amount necessary to replace the questionable paper, and further informed him that an assessment of eighteen hundred dollars had been levied against his stock, and demanded payment thereof.

At first, appellant refused, stating he was without funds, and, inasmuch as he had received no notice of any stockholders' meeting at which an assessment was authorized, the assessment was illegal. Thereupon, Mr. Miller requested him to execute his note for the sum of eighteen hundred dollars, representing that it would be renewed from time to time, and that payment thereof would never be demanded, as the note could be paid from dividends to be declared on his stock and from the sale of the impaired securities, and, if the money raised from these two sources proved insufficient, the officers' salaries would be raised and a portion diverted to the payment thereof until the note was fully liquidated; and, relying on these representations, appellant agreed to sign his note in the sum of eighteen hundred dollars.

Apparently no note was available at that moment, and, several weeks later, April 4, 1923, appellant was again interviewed at Spokane by Mr. Camp, cashier of the bank, who presented him with a note for his signature, which he refused to sign, stating that he had changed his mind. Thereupon Mr. Camp stated to appellant that, if he refused to sign the note, a sufficient amount of his stock would be cancelled on the books of the bank and sold, and the proceeds applied in payment of the assessment levied against his stock, and, believing that this threat might be carried out by the bank's officers, appellant executed and delivered his note to the cashier on April 4, 1923.

Six months later, October 3, 1923, that note was cancelled, and, on the same day, a renewal note in like amount, payable six months after date, was executed, together with a note for $71.18, in payment of the accrued interest on the initial note of April 4, 1923. On May 2, 1924, the October note for eighteen hundred dollars was cancelled, and the note in suit executed. Furthermore, the following amounts, received from the sale of impaired securities and from dividends declared on his bank stock, were credited on appellant's note: March 10, 1926, $81.00; January 20, 1927, $40.00; December 15, 1927, $600.00. On January 24, and again on March 21, 1924, appellant learned that the officers of the bank at no time had levied an assessment against his stock, nor against any of the stock held by the several stockholders, but that the stockholders among themselves had agreed to a voluntary assessment.

At the conclusion of the introduction of testimony, the court withdrew the case from the consideration of the jury, and entered judgment for respondent. This is assigned as error. Appellant urges that the question whether he executed and delivered the initial

note of April 4, 1923, under duress and fraud, was one of fact, and should have been submitted to the jury for determination.

We find no merit in this contention for several reasons. Approximately thirteen months elapsed from the time he executed the initial note, which he maintains he was induced to sign by reason of fraud and duress, to the time he executed the note sued on, and, during the interim, the initial note was cancelled and the first renewal note, as well as the interest note, were forwarded to him at Spokane by mail, which he signed on October 3, 1923, and returned to the bank at Colfax. Furthermore, the second renewal note of May 2, 1924, was signed under similar circumstances. These two renewal notes, and the interest note, were all executed of his own free will and accord. Moreover, during all this time, appellant never claimed that the initial note of April 4, 1923, had been procured by fraud and duress—in fact, no complaint of that character was made at any time during five and a half years—from April 4, 1923, to December 22, 1928, the time suit was brought. That appellant relied solely and entirely upon the collateral oral contemporaneous agreement, is disclosed by his letter of September 28, 1923, written in regard to the execution of the renewal note of October 3, 1923, for that letter contains no intimation of fraud or duress.

Again, on January 22, 1924, approximately three and a half months before he executed the note sued on, appellant received a statement from the bank, advising him that the bank officials at no time had levied an assessment against his stock, but that the stockholders among themselves had agreed to a voluntary assessment. This fact, he further verified March 21, 1924, at which time he spent an entire day at the bank,

and admits that he then thoroughly understood it to be a voluntary assessment.

Generally speaking, duress does not exist unless one, by the unlawful act of another, is induced to make a contract under circumstances which deprive him of the exercise of his free will. The rule is well stated in 2 Greenleaf, Evidence, § 301:

"Duress is that degree of severity, either threatened and impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness."

See, also, *Walla Walla Fire Ins. Co. v. Spencer,* 52 Wash. 369, 100 Pac. 741; *Ingebrigt v. Seattle Taxicab & Transfer Co.,* 78 Wash. 433, 139 Pac. 188; *Cornwell v. Anderson,* 85 Wash. 369, 148 Pac. 1.

Not only was appellant thoroughly familiar with the fact that the stockholders had agreed to a voluntary assessment at least from two to four months prior to the execution and delivery of the note sued on, but, thereafter, all moneys received from the impaired securities, and from dividends declared on his stock, were credited on his note. During this interval, he at no time protested that he had been induced to sign the note through fraud and duress. Furthermore, he took no steps to repudiate or rescind his contract, although approximately five and a half years elapsed from the time of the execution of the initial note to the time of suit.

The law is well settled that a person who desires to rescind a contract on the ground of fraud or duress, is required to act with reasonable promptness, and delay in making an election to rescind is a waiver of the misconduct of the other party, and will be deemed an election to treat the contract as valid and binding.

"One who seeks to avoid a contract which he has been induced to enter into by the fraudulent representations of another touching the subject-matter of the

contract, must proceed with reasonable promptitude upon discovering the fraud, or he will be held to have waived his right to rescind." *Angel v. Columbia Canal Co.,* 69 Wash. 550, 125 Pac. 766, and cases cited.

▉ Appellant next maintains that the note sued on was without consideration. We find no merit in this contention. The doubtful securities held by the bank were replaced by liquid assets, the effect of which was to sustain and possibly enhance the value of appellant's stock. In addition thereto, collections had been made on the impaired securities, and distributed among the stockholders. Unquestionably, appellant's stock of the par value of $4,000, and he admits its worth to be considerably in excess thereof, would have depreciated in value, if the supervisor of banking had taken charge of, and liquidated, the affairs of the bank. The prevention of this constitutes a valuable consideration.

The case of *Klitten v. American Security Bank of Kennewick,* 140 Wash. 286, 248 Pac. 435, is directly in point. Appellant there, as here, was an organizer and stockholder of a bank; there, as here, the bank had assets consisting of loans evidenced by notes deemed questionable of collection; there, as here, the supervisor of banking insisted that the doubtful paper be replaced by liquid assets; there, as here, a stockholder executed and delivered a promissory note to the bank which was used in purchasing the impaired assets; there, as here, it was understood and agreed that whatever money was recovered from the questionable paper, would be distributed among all the stockholders; there, as here, the defense was want of consideration, and fraud and deceit exercised by the officers of the bank. Passing on the question of consideration, we said:

"Appellant further contends in this connection that, because of the nearly wholly worthlessness of these

assets, there was such a substantial failure of consideration for the execution by her of the $15,000 note as to entitle her to cancellation of the note, she tendering to the bank her interests in the assets. This contention must fail, since it is plain that even the considerably less than par value of the purchased assets, *with the securing of the continuation of the bank as a going concern, was abundant consideration* for her execution of the note." (Italics ours.)

█ At the trial, appellant undertook to prove the collateral oral agreement which he alleged was made contemporaneous with the execution of the initial note of April 4, 1923. This proffered proof, the court rejected, and properly so. His own testimony established that the agreement depended on a condition subsequent. If a contemporaneous oral agreement, depending on the happening of a condition subsequent, could defeat recovery on a note, the rule which provides that a written instrument cannot be varied by parol evidence, would be abolished. This question has been frequently before this court:

"That a collateral oral agreement limiting the liability of the maker of an unqualified promise to pay, or fixing a collateral source of payment, is not available as a defense is now well settled by our own decisions." *Van Tassel v. McGrail*, 93 Wash. 380, 160 Pac. 1053.

The following cases are to the same effect: *Tacoma Mill Co.v. Sherwood,* 11 Wash. 492, 39 Pac. 977; *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751; *Pitt v. Little,* 58 Wash. 355, 108 Pac. 941; *First National Life Assurance Society of America v. Farquhar,* 75 Wash. 667, 135 Pac. 619.

Judgment affirmed.

MITCHELL, BEALS, MILLARD, and FULLERTON, JJ., concur.