[No. 23071. Department Two. July 20, 1931.]

FIRST STATE BANK OF KELLOGG, *Appellant*, v. M. W. MERRITT, *Respondent*.[1]

[1]Reported in 1 P. (2d) 902.

468

*Hamblen & Gilbert* (*Philip S. Brooke,* of counsel), for appellant.

*Tustin & Chandler,* for respondent.

BEALS, J.— Plaintiff sued defendant, demanding judgment for two thousand dollars, together with interest and attorney's fees, claiming that amount as due it upon a note for the sum of $11,600, signed by defendant, payable to the order of Walter D. Roberts, and by the payee endorsed and delivered to plaintiff as collateral security to a two thousand dollar note executed by Mr. Roberts to plaintiff's order. Defendant answered, denying any indebtedness on his part to plaintiff, and stating an affirmative defense containing allegations to the effect that plaintiff and Roberts had fraudulently conspired to turn over to plaintiff defendant's note above referred to for the purpose of extorting money from defendant. The action was tried to a jury, which returned a verdict in defendant's favor. From a judgment entered upon this verdict, plaintiff appeals.

No error is assigned upon any of the court's instructions, appellant contending that the trial court erred in rejecting certain evidence offered by appellant, in admitting over appellant's objection evidence offered

by respondent, and in denying its motion for judgment in its favor notwithstanding the verdict or, in the alternative, for a new trial, error being also assigned upon the entry of the judgment dismissing the action.

Appellant contends that there is no substantial evidence upon which the verdict may rest, and that, this court having rejected the scintilla of evidence rule (*Jones v. Harris,* 122 Wash. 69, 210 Pac. 22; *Kelly v. Drumheller,* 150 Wash. 185, 272 Pac. 731), the judgment must be reversed as lacking substantial support in the record.

The following is a brief statement of the facts, as disclosed by the evidence. Respondent is a successful farmer, well along in years, a substantial stockholder in and a director of the Whitman County National Bank. When Walter D. Roberts, with whom respondent had been acquainted for a long time, undertook to promote a corporation known as Stockmen's Union Yards, for the purpose of conducting stockyards in the city of Spokane, respondent became interested in the proposition and was named as an officer of the company, and as such attended several trustees' meetings, although his connection with the company is not clearly disclosed by the evidence. One L. F. Reinhard, an office associate of Roberts, introduced Roberts to appellant bank, which made him certain advances. During the month of December, 1927, respondent, as accommodation maker, joined with Roberts in the execution of a note, payable to appellant's order, in the sum of $7,500, due in sixty days, which note was a renewal of three notes, each for $2,500, representing money previously loaned by appellant to Mr. Roberts, upon some of which respondent may also have been an accommodation maker or endorser. February 28, 1928, appellant loaned Mr. Roberts an additional two thousand dollars, taking from him his note, or draft, for that

amount, which note was thereafter twice renewed, the last renewal falling due June 22, 1928.

March 24, 1928, appellant, being then the holder of the $7,500 note signed by respondent and Mr. Roberts, and the two thousand dollar note signed by Mr. Roberts alone, sent its vice-president, W. O. Straight, to Spokane to effect some settlement. Meeting respondent, by previous arrangement, at Mr. Roberts' office, Mr. Straight advised him that suit would be instituted unless some adjustment was made forthwith; whereupon, after some discussion, Mr. Roberts delivered to respondent a certificate for 11,600 shares of the non-par value capital stock of Stockmen's Union Yards (which corporation was then in financial difficulties, the stock being probably of little or no value, the company thereafter going into the hands of a receiver), whereupon respondent executed his note for $11,600, payable to the order of Walter D. Roberts on or before ten days from date. At another meeting held in Mr. Roberts' office in the afternoon of the same day, Mr. Straight refused to accept as security the corporate stock which respondent had received, and respondent then offered to deliver to appellant, as collateral, thirty shares of the capital stock of Whitman County National Bank, whereupon the following agreement was drawn up by Mr. Straight, signed by respondent, and that evening assigned by Mr. Roberts to appellant:

"Spokane, Wn. 3-24-1928.

"In consideration of Walter D. Roberts accepting my note for $11,600 payable on or before ten days from this date for balance owed him for stock, I am delivering him 11,600 shares of stock in the Stockmen's Union Yards of Spokane, Wash., and I also agree to deliver to the First State Bank of Kellogg, Idaho, as collateral to said note thirty (30) shares of stock in the Whitman County Natl. Bank of Rosalia, Wn., said stock to be delivered Monday, March 26, 1928, as above stated.

When the $7,500 note of which I am joint maker on at the First State Bank of Kellogg, Kellogg, Idaho, has been paid the said bank at Kellogg, Idaho, is to return the 30 shares of stock to me.

"M. W. MERRITT.
"Spokane, Wn. 3-24-1928.

"I hereby assign above agreement to First State Bank of Kellogg, Kellogg, Idaho.

"WALTER D. ROBERTS."

Both the stockyards and bank stock were left in escrow with Mr. Reinhard, he giving respondent a receipt in the following form:

"Spokane, Wash., March 24, 1928.

"Rec'd of W. O. Straight, Vice-President, First State Bank of Kellogg, Certificate No. C 10 for eleven thousand six hundred shares of non-par value stock in Stockmen's Union Yards issued to M. W. Merritt and endorsed by him, to be held in trust until note for $7,500 issued by M. W. Merritt and W. D. Roberts jointly, in favor of said bank, has been paid, at which time said certificate is to be delivered back to me.

"L. F. REINHARD."

On the evening of the same day, Mr. Roberts, at the time he assigned to appellant the agreement above referred to, endorsed to appellant the $11,600 note, which he had just received from respondent, to hold as collateral to all of his (Roberts') indebtedness to appellant, including the two thousand dollar note, concerning which respondent testified that he had no knowledge. April 2nd following, respondent paid, through Mr. Reinhard, the $7,500 note, whereupon the stockyards and bank certificates of stock were returned to him; respondent signing therefor a receipt in the following form:

"Spokane, Wash., April 2, 1928.

"Rec'd of Edith Freimuth Certificate No. 10 for eleven thousand six hundred shares of common stock in the Stockmen's Union Yards, and Certificate No. 6,

covering thirty shares in the Whitman County National Bank, in exchange for check of $7,500, which check is to be turned over to Mr. Greenwood of the Old National Bank and deposited to the credit of the First State Bank of Kellogg, Idaho.

"M. W. Merritt."

Mr. Roberts not paying his two thousand dollar note, appellant brought this action against respondent to recover the amount due thereon, claiming that the $11,600 note, signed by respondent, was held by appellant as collateral security for the Roberts note.

During the trial, appellant offered in evidence the personal financial statement of Walter D. Roberts, offered by him to appellant early in November, 1927, which Mr. Roberts submitted to appellant for the purpose of assisting in establishing or maintaining his credit. Among other items, this statement showed, under accounts receivable, $10,600 due Mr. Roberts from respondent, it being the contention of appellant that this statement was material as affording Mr. Straight, when he met respondent in Spokane, reason for the belief that respondent was actually indebted to Roberts. Respondent objected to the admission of the statement in evidence, the same being identified by witness W. O. Straight, on the ground that it was a self-serving declaration, and upon the further ground that Mr. Roberts was not subject to cross-examination concerning the same unless he appeared as a witness. The court then definitely ruled upon the matter, sustaining respondent's objection to the admission of the statement. Mr. Roberts was later sworn as a witness on behalf of appellant, but the document above referred to was not again offered, nor was Mr. Roberts interrogated concerning the same.

Appellant contends that the statement was admissible under the testimony given by witness Straight,

but, under the circumstances disclosed by the record, we cannot hold that the court, in sustaining the objection at the time it did, committed reversible error. The objection was sustained, at least in part, because the testimony of Mr. Roberts was not offered in connection therewith and an opportunity afforded respondent to cross-examine Mr. Roberts concerning the statement. Such evidence as appellant here sought to introduce is sometimes admissible to show the opinion or belief of a person at a particular time, when such opinion or belief becomes material or relevant, in support of which proposition appellant cites authorities. This was not exactly the question presented here. The witnesses, including Mr. Straight, testified at length as to what was said and done at the meeting in Spokane, which resulted in the signing of the $11,600 note by respondent. If the jury had believed the story told by appellant's witnesses, undoubtedly a verdict in favor of appellant would have been returned, but such was not the case.

We cannot, in view of respondent's testimony, see the particular materiality of Mr. Straight's belief, before he went to Spokane, as to whether or not respondent was indebted to Mr. Roberts. Respondent's liability depended upon what was said and done on and after the date of the meeting of the parties in Spokane. In any event, appellant, having failed to request Mr. Roberts, when offered as a witness on its behalf, to identify the statement and permit respondent to cross-examine Mr. Roberts concerning the same, is not now in a position to contend that the ruling of the trial court constituted error.

Appellant next contends that the trial court erred in receiving in evidence over appellant's objection a note in the sum of ten thousand dollars, executed May 4, 1928, by Mr. Roberts in favor of respondent,

and in permitting respondent to testify concerning an endorsement on the note, which endorsement reads as follows:

"This note given to M. W. Merritt to be held as offset against a certain $10,000 note given for stock in Stockmen's Union Yards, and is to be cancelled upon delivery to him of said note. He to return stock to me that is covered by said note.

"WALTER D. ROBERTS."

Appellant contends that the admission of this evidence violated the parol testimony rule and constituted reversible error. In receiving this evidence, the trial court stated that the same was admitted for the consideration of the jury in connection with the testimony of witness Roberts. Mr. Roberts, testifying as an interested witness on behalf of appellant, stated that the note for $11,600 was given him by respondent for value, and represented an agreed purchase of that number of shares of stock by respondent. An admission by Roberts, although made at a subsequent date, was admissible for the purpose for which the same was received by the trial court, as bearing upon the weight which the jury should give to Mr. Roberts' testimony.

Finally, appellant contends vigorously that there is no substantial evidence in the record to support the verdict in respondent's favor. In this connection, it must be remembered that the three principal witnesses for appellant, Messrs. Straight, Roberts and Reinhard, were all interested to a greater or less extent in holding respondent in this action; Mr. Straight, on behalf of his employer (appellant), was anxious to collect a two thousand dollar note of very doubtful value; Mr. Roberts was naturally anxious to see that his note was paid; while Mr. Reinhard, who was a friend of Mr. Roberts, and who shared with him a

suite of offices, naturally felt some obligation to appellant from the fact that he had introduced Mr. Roberts to appellant's officers and, as he testified, felt morally responsible to see that at least a certain portion of the indebtedness was paid. The three witnesses referred to testified on behalf of appellant that there was no understanding that the note for $11,600 was to be returned to respondent when the note for $7,500 was paid, and appellant contends that even respondent himself did not testify directly that this note was to be returned to him. In this connection, we have carefully read the testimony given by respondent, as contained in the statement of facts, and are of the opinion that, from his testimony, it sufficiently appears that it was his contention that the note for $11,600 was, with the other papers, to be held in escrow by Mr. Reinhard and returned to him upon payment by him of the $7,500 note. It is true that the papers signed by respondent hereinabove quoted are silent upon this point, but respondent testified that, when he paid the $7,500 note, he demanded the return of the larger note, and that he expected that it would be returned to him, and not until some time thereafter learned that appellant held the note under a claim of pledge. Mr. Straight admitted that, at the meeting with respondent in Spokane, where Mr. Straight had gone to collect the $7,500 note, he said nothing to respondent about the existence of the two thousand dollar note, testifying in part as follows:

"Q. What was the $11,600 note put up for? A. As security or backing for the $2,000 note. Q. Did I misunderstand when you said a while ago that you never talked the two thousand dollar note to Mr. Merritt? A. No, sir, it wasn't talked to Mr. Merritt. Q. Then why did Mr. Merritt give the $11,600 note to you? A. For Mr. Roberts. Q. Did you tell him why you were

accepting it? A. I told him we were going to hold it until the note was paid; until the $7,500 note was paid,"

and more to the same effect.

In support of its contention that it should prevail on this appeal, appellant cites the case of *Whitman R. & I. Co. v. Day,* 161 Wash. 72, 296 Pac. 171, in which this court said:

"If a contemporaneous oral agreement, depending on the happening of a condition subsequent, could defeat recovery on a note, the rule which provides that a written instrument cannot be varied by parol evidence would be abolished. This question has been frequently before this court:

" 'That a collateral oral agreement limiting the liability of the maker of an unqualified promise to pay, or fixing a collateral source of payment, is not available as a defense is now well settled by our own decisions.' *Van Tassel v. McGrail,* 93 Wash. 380, 160 Pac. 1053."

In this connection, appellant also cites the case of *Kuhn v. Simmons,* 126 Me. 434, 139 Atl. 474, in which the rule is laid down as follows:

"It may be shown that a bill or note, absolute in form, although manually delivered to the payee, was, by a prior or contemporaneous oral agreement, not to become a binding obligation except upon the happening of a certain event. (Citing cases.)

"It cannot be shown that such a note delivered by the promisor as an obligation was not absolute according to its terms but conditional, its payment or enforcement depending on a contingency. (Citing cases.)

"That is, it may be shown that the note's becoming a binding obligation was dependent upon a condition precedent. It cannot be shown that its obligation, if it were delivered as an obligation, was dependent upon a condition subsequent contradicting or at variance with the express terms, because of the well established rule that parol evidence is inadmissible to vary or contradict the terms of a written instrument."

In our opinion, the situation here presented falls within the first class referred to in the case last cited, and is within the rule laid down by this court in the case of *Blaine v. Darwin,* 160 Wash. 327, 295 Pac. 131, and that respondent's contention was rather that the $11,600 note was, by agreement of the parties, to become a binding obligation only as security for the payment of the $7,500, and that respondent did not seek to establish that the same was a conditional obligation or not absolute according to its terms. Respondent contended that his note for $11,600, although manually delivered, was, by a contemporaneous oral agreement, delivered for a certain and limited purpose only, to wit, as security for the payment of the $7,500 note.

No questions involving a holder in due course, for value, are here presented.

It is not always easy to properly classify contentions of the respective parties in an action such as this upon a written instrument, but we conclude that in the case at bar respondent was entitled to have the jury pass upon his theory of the case, and that this theory fell within the principle of the case of *Blaine v. Darwin, supra,* rather than within the rule laid down by the authorities cited by appellant.

After careful consideration, we are of the opinion that respondent offered substantial testimony in support of his theory of the transactions between the parties, and that it cannot be held, as matter of law, that the verdict rendered by the jury in respondent's favor is not supported by substantial evidence.

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, C. J., MILLARD, BEELER, and MAIN, JJ., concur.