[No. 31731.   Department One.   March 13, 1952.]

FRIEDA TECKLENBURG *et al., as Administrators, Appellants,*
v. WASHINGTON GAS & ELECTRIC COMPANY *et al.,*
*Respondents.*[1]

[1]Reported in 241 P. (2d) 1172.

*Hyland, Elvidge & Watt* and *Duane Tewell*, for appellants.

*Metzger, Blair, Gardner & Boldt,* for respondents.

GRADY, J.—Belle O. Brayton was the owner of business property in Everett, Washington. She had leased it to the Washington Gas & Electric Company for a rental of $250 per month. During the term of the lease, the lessee had subjected itself to the jurisdiction of the bankruptcy court in the state of New York and a trustee had been appointed.

In 1943, respondents entered into negotiations with the lessor to renew their lease for a term of five years, commencing January 1, 1944, at a rental of $125 per month. The lease was subsequently executed. Some time thereafter, the lessor was adjudicated to be mentally incompetent, and appellants were appointed her guardians. She died April 10, 1946, and appellants were appointed administrators of her estate.

During the guardianship, appellants commenced an action to secure a declaratory judgment to determine whether the lease was invalid because of the claimed incompetency of the lessor and undue influence exerted upon her at the time of its execution, and whether there should be asserted in her behalf the right to receive from the lessee the difference between the rental provided in the lease and the reasonable value of the use of the leased property from the time of its execution. The guardians sought to invoke the equity powers of the court to require the lessee to pay additional rental on the theory that their ward had been overreached when the renewal lease was negotiated and an advantage taken by the lessee of her mental incompetency.

After the death of the lessor, the administrators of her estate were substituted as plaintiffs in the action. On April 23, 1948, appellants filed their second amended complaint, advancing substantially the same theory set forth in the

original complaint, but asking, in addition to declaratory relief, a money judgment representing the difference between the contract rental of $125 per month and $250 per month, the alleged reasonable rental value.

The trial court concluded that the evidence did not establish, by a fair preponderance thereof, that Belle O. Brayton was incompetent to know and understand the nature of the transaction entered into on November 23, 1943. The court found that the lessee did not exert any unfair or undue influence or perpetrate any fraud upon Belle O. Brayton at the time of the signing of the lease, or prior thereto, and did not mislead her concerning the material facts relating to such lease. A judgment was entered dismissing the action.

In many cases where a contract or deed has been the subject of attack, it has been claimed that the party making such instrument was mentally incompetent so to do, and also was the victim of undue influence. It is recognized that a competent person may be subjected to undue influence and his conduct be governed thereby, though such a result is less likely in the case of a strong-minded person than one mentally weak and infirm. A person is regarded as mentally incompetent when he does not possess sufficient mind or reason to enable him to comprehend the nature, terms, and effect of the particular transaction in which he is engaged. He has been unduly influenced if the actor goes beyond persuasion, the influence exerted overcomes the will of the contractor or grantor, he is rendered incapable of acting upon his own motives, and his free agency is destroyed with reference to the particular transaction questioned. *Page v. Prudential Life Ins. Co.*, 12 Wn. (2d) 101, 120 P. (2d) 527; *Parris v. Benedict*, 28 Wn. (2d) 817, 184 P. (2d) 63; *Thilman v. Thilman*, 30 Wn. (2d) 743, 193 P. (2d) 674; *Vossen v. Wilson*, 39 Wn. (2d) 906, 239 P. (2d) 558.

Keeping in mind that mental competency is presumed, and that the evidence to establish mental incompetency, fraud, or undue influence must be clear, cogent, and convincing, we have examined the record to determine

whether the court made correct findings of fact and entered the proper judgment. The fact that the lessor was of the age of about eighty-one years when the lease was executed by her, and that it was necessary that she be taken to a sanitarium for mental patients five months later for care and treatment, invites more than an ordinary study of the evidence.

The testimony submitted by appellants relating to the mental condition of the lessor when she executed the lease was given by her attorney, two lady friends and neighbors (one of them being an administrator of her estate), the manager of the safe deposit department of a bank with which the lessor transacted business, the judge of the superior court before whom she appeared when application was made for her appointment as executrix of her deceased husband's will, and the physician who rendered her professional service from April 23, 1944, until the time of her death April 10, 1946. The respondents submitted testimony given by the local manager of the corporate respondent and his wife. They had been acquainted and friendly with the lessor for a number of years. A deposition given by the notary public who took the acknowledgment of the lessor to the lease was read.

In a case of this kind usually the best and most persuasive testimony is that given by a physician versed in mental diseases. The lay witnesses who testified related various acts and the course of conduct of the lessor over a considerable period of time prior to the execution of the lease, all of which were characteristic of one of the age and physical condition of the lessor afflicted with the mental disease diagnosed by the physician to have been senile arteriosclerotic changes. They also gave their opinions that, at the date of the execution of the lease, the lessor did not have sufficient mental capacity to know or understand the nature of such a business transaction. We find it unnecessary to either portray in detail or to analyze their testimony, in view of the conclusion we reach as to the evidential value of that given by the physician.

We accept the opinion of the physician that the lessor on the occasion of his first professional service on April 23, 1944, was lacking in contractual capacity. He was also of the opinion that the mental disease had its inception several years before that date and had progressed so far by November 23, 1943 (the date the lessor executed and acknowledged the lease) that the lessor lacked contractual capacity.

The record shows that in February, 1943, the lessor was informed by the local manager of the lessee that one of the plate glass windows of the leased building had become cracked. On February 7, 1943, the lessor responded to that letter, and in view of the significance we give to it as bearing upon the mental capacity of the lessor to transact business with reference to her property, we quote it as follows:

"Mr. C. E. Lasher.             Seattle Feb. 7th, 1943
   "Dear Sir;
   "In regard to crack in plate glass, I agree with you, to have it replaced as soon you can. That snow & freezing weather was a surprise. I am sorry that the window glass broke, but of course it couldn't be helped. so have a new glass put in, send the bill to me.
   "yours truly
   "Belle O. Brayton.
"We have had quite a change in mail service. Some times we didn't get any mail but now twice a day. We had a lot of snow in Seattle it is all gone now.
   "Belle O. Brayton."

Commencing in July, 1943, the manager negotiated with lessor, both by letters and conversations, for a five-year renewal lease. The principal point about which the negotiations revolved was a reduction in the monthly rental from $250 per month to $125 per month. The manager informed the lessor that his principal did not need as much space for its then business purposes as the leased building afforded, and that it had an opportunity to rent another building in the neighborhood for a much less rental. The lessor expressed her desire to have her building occupied. She stated her business relationship with the respondent had been very satisfactory and that she desired the tenancy to

continue. She further expressed the thought that she would have to go to considerable expense to protect the building against damage in the event it was vacant. She indicated a willingness to reduce the rental to $200 per month. This was not acceptable to respondent, and the final result of the negotiations was that the lessor agreed to execute a renewal lease for a term of five years at a monthly rental of $125 per month. A lease substantially the same as the former one, except as to amount of monthly rental, was prepared, and the manager of respondent, accompanied by his wife, visited the home of the lessor. The ladies had not met for some time and all parties engaged in social conversation. The manager secured the attendance of a notary public. The lease was read to the lessor. She, signed it, and the notary public took her acknowledgment. The manager, his wife, and the notary public gave testimony as to the manner of conversation and the conduct of the lessor on that occasion and stated to the court that she discussed the transaction in such a manner that they knew that she understood that she was executing a lease for her property and all of its terms and conditions.

We accept the testimony of the witnesses called by respondents and are convinced by it that the lessor, with full understanding and in a very businesslike way, negotiated the renewal of the lease; that she was able to and did conclude it was to her best interests to lease the property at a reduced rental, and executed the lease with a full understanding of its import.

In view of the evidence submitted by respondents, we reach the conclusion that the physician was mistaken when he gave his opinion that the lessor did not have sufficient mental capacity to understand the lease transaction when she executed the lease at a time approximately five months prior to the date he first made her acquaintance. The probative value of the opinion given by the physician is so completely destroyed that we readily reach the conclusion that the evidence of mental incapacity on the part of the lessor to make a lease transaction is not only insufficient to establish that fact, but on the contrary the preponderance of the

evidence necessitates the conclusion that mental capacity did exist.

We are in accord with the view of the trial court that the record disclosed no substantial evidence of any fraud or overreaching perpetrated by respondents or their agent, and that there is neither evidence nor inference from evidence from which it can be said that any undue influence was exercised in the negotiation or procurement of the lease from the lessor.

In view of the conclusion we have reached, it becomes unnecessary to decide the question raised whether the theory of recovery advanced by appellants has any legal basis.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.

