[No. 1159-1.    Division One—Panel 1.    December 26, 1972.]

DONALD PLEUSS, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Respondents*.

*Heavey & Picton* and *James D. Picton*, for appellant.

*A. L. Newbould* and *Donald H. Stout*, for respondents.

HOROWITZ, C.J.—Plaintiff Donald Pleuss seeks review of a judgment refusing to issue a writ of mandate requiring the City of Seattle and the Firemen's Pension Board to pay plaintiff a disability pension; to invalidate plaintiff's purported resignation as a fireman from Seattle's Fire Department; and to restore plaintiff to his position as a fireman.

Plaintiff joined the Seattle Fire Department in January 1967. While serving as a fireman, he was injured in January 1968. After treatment, he returned to work in September 1968. Upon returning, the chief of the fire department summoned plaintiff to his office. There plaintiff was questioned about riding on a motorcycle during his period of treatment and allegedly falsifying his medical records upon joining the department. Plaintiff denied having ridden the motorcycle. He explained he had recently sold the vehicle to another fireman. The chief promised to obtain corroboration of plaintiff's denial. Corroboration was obtained.

Four days after the first meeting, plaintiff was again summoned to the chief's office at 10 a.m., which was at the end of plaintiff's working day. The assistant chief, considered by plaintiff to be the department's disciplinarian, was also present. The chief told plaintiff the latter had falsified his records when joining the department and that this was sufficient ground for dismissal under the rules of the civil service commission of the City of Seattle. He then told plaintiff he had the option of resigning or being dismissed, and that he had until about 4 p.m. to decide what he would do. Plaintiff knew he had not supplied all the information required in the various forms he had to complete prior to being employed by the department. Plaintiff requested and received an opportunity to see an attorney. Whether plaintiff then signed a resignation from the department is not clear. Plaintiff knew, however, he had until 4 p.m. to make a final decision.

On the same day plaintiff consulted his then attorney, not counsel of record on appeal. Plaintiff testified his attorney told him "It don't make any difference if you [plaintiff] sign or you are fired, you still have the right to a civil

service hearing which at this time he told me he was going to file for a civil service hearing." Plaintiff further testified his attorney told him that he could resign "which would make it easier for me to get other employment without any questions, because it would take some time in court and it didn't matter if I resigned or was fired." After this consultation, plaintiff returned to the fire department headquarters and either signed or otherwise confirmed his resignation. After resigning, plaintiff obtained employment elsewhere. He continued his medical treatment, undergoing a second surgical operation for that purpose.

The Firemen's Pension Board refused to pay plaintiff's medical expenses incurred by him after his resignation but necessitated in the treatment of injuries sustained while plaintiff was a fireman. The court held that plaintiff was entitled to reimbursement for these expenses and reversed the board's determination to the contrary. Defendants have not appealed from the reversal. The trial court, however, sustained the board's findings and conclusions that plaintiff, by reason of his resignation, was not a fireman and, accordingly, not entitled to a disability pension under RCW 41.18.060.

Plaintiff contends that his status as a fireman was not severed by his resignation because his resignation was obtained by duress and undue influence. He accordingly claims a disability pension as a fireman. Defendants contend that under article 16, section 12 of the Charter of the City of Seattle applicable here, the civil service commission has exclusive jurisdiction to determine the validity of the resignation; that no such determination has been made, and it is now too late to obtain such a determination. Accordingly, defendants argue plaintiff's resignation must be deemed to have been voluntarily made. Defendants further contend that substantial evidence supports the court's finding that "Plaintiff's resignation was voluntary, not coerced." We agree with defendants' contentions.

Article 16, section 12 of the Charter of the City of Seattle provides:

Every officer or employee in the classified civil service shall hold office until removed or retired. Any officer or employee whose appointment is complete may be removed by the appointing power only upon the filing with the Commission of a statement in writing of the reasons therefor. Any officer or employee so removed may within ten days after his removal demand an investigation. The Commission shall forthwith make such investigation and its finding and decision shall be certified to the appointing officer, and if the removal is not sustained thereby, the officer or employee so removed shall at once be re-instated.

As stated in *State ex rel. Abel v. Seattle,* 137 Wash. 142, 242 P. 9 (1926):

Under § 12, article XVI, one who is removed must demand investigation within ten days after his removal and, in the absence of such a demand, the removal is complete and, of course, will not be interfered with.

137 Wash. at 146. Plaintiff contends in effect that he was unlawfully removed because his resignation was involuntary and he is entitled to reinstatement. Whether plaintiff was unlawfully removed is a matter exclusively for determination by the civil service commission pursuant to article 16, section 12 of the Seattle City Charter. The review must be demanded "within ten days after his removal." *State ex rel. Dunn v. Elliott,* 6 Wn.2d 426, 107 P.2d 915 (1940); *State ex rel. Hubbard v. Seattle,* 135 Wash. 505, 238 P. 1 (1925); *State ex rel. Davis v. Seattle,* 125 Wash. 660, 216 P. 858 (1923); *State ex rel. Lennon v. Kellogg,* 119 Wash. 584, 205 P. 843 (1922).

In the instant case, the plaintiff knew the facts when he resigned. Following his resignation, he was free to pursue his remedies by applying to the civil service commission. *See Chatfield v. Seattle,* 198 Wash. 179, 88 P.2d 582, 121 A.L.R. 1279 (1939). He was aware of his remedies. On that same day, as he himself testified, he had been told by his then lawyer that he had a right to a civil service hearing on the propriety of the resignation, and yet he did not obtain the permitted review. Instead, 9 months later he brought

the action below. Under the circumstances, we must treat plaintiff's resignation as a voluntary one in the absence of a determination by the civil service commission to the contrary.

■■ Assuming arguendo the question of duress and undue influence is open for initial determination by the court below, the court's finding that the resignation was voluntarily given is supported by substantial evidence. The finding properly applies the commonly understood definitions of duress and undue influence. Restatement of Contracts § 492 (1932) defines duress as follows:

> Duress . . . means
> (a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or
> (b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.

Restatement of Contracts § 497 (1932) defines undue influence as follows:

> Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter, is induced by undue influence and is voidable.

The Washington cases in effect conform to these definitions. *State ex rel. Bradford v. King County*, 197 Wash. 393, 85 P.2d 670 (1938); *Whitman Realty & Inv. Co. v. Day*, 161 Wash. 72, 296 P. 171, (1931); *Tecklenburg v. Washington Gas & Elec. Co.*, 40 Wn.2d 141, 241 P.2d 1172 (1952).

■ It is unnecessary to explore the limits of the relationship between threats and duress. In connection with these definitions, however, it is enough to state that a mere threat to exercise a legal right made in good faith is neither duress nor coercion in law. A threat may be said to be

made in good faith if made in the honest belief that valid grounds exist to justify the action threatened. *Gibson v. Thisius,* 16 Wn.2d 693, 134 P.2d 713 (1943); *Doernbecher v. Mutual Life Ins. Co.,* 16 Wn.2d 64, 132 P.2d 751 (1943); *Starks v. Field,* 198 Wash. 593, 89 P.2d 513 (1939); Restatement of Restitution § 71 (1937). *See generally* Restatement of Contracts §§ 492-99 (1932).

In the instant case the conduct complained of was a threat from the chief of the fire department in the presence of the assistant chief to discharge plaintiff because the latter had falsified his medical records upon joining the fire department—a sufficient ground for discharge. Plaintiff was given the option of resigning or being discharged, but was also given an opportunity to consult with his attorney before determining what to do. He took advantage of the opportunity given and acted in light of the advice he obtained. The fact that the alternatives offered were each disagreeable to the plaintiff, or the fact that he was confronted with these alternatives initially at the end of his working day when he was tired, or the fact that he was informed of these alternatives by the chief of the fire department in the presence of the assistant chief, even when considered together are insufficient to constitute either duress or undue influence under the applicable rules of law discussed. The fact that he at least confirmed his resignation after receiving legal advice from his own lawyer is sufficient evidence to show in law that his decision to resign was a voluntary one. *See Chatfield v. Seattle, supra; McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970). *See generally Ostertag v. Donovan,* 65 N.M. 6, 331 P.2d 355, 70 A.L.R.2d 583 (1958); Restatement of Restitution § 70 (1937). *Cf.* Restatement of Contracts §§ 492-93 (1932).

*Papert v. Conway,* 107 N.Y.S.2d 638 (Sup. Ct. 1951), is an instructive case. The court there held that a threat to discharge a civil service employee for tardiness, absence and failure to properly perform her duties and denial of

her application for sick leave did not constitute duress so as to invalidate her written consent to transfer to a less desirable position in the civil service. The court said:

> Petitioner complains that her transfer to the position which she presently occupies was a demotion or removal and therefore violated Section 22, subd. 2 of the Civil Service Law. It appears, however from the petition itself that petitioner, in November, 1948, signed a consent to the transfer of which she now complains. Such a consent is not against public policy [citations omitted]. Petitioner alleges that her consent was obtained by duress, but the petitioner fails to alleged facts sufficient to make out a case of duress. The alleged threat to prefer charges against petitioner for lateness, poor attendance, failure to follow instructions of her superiors, and delay in completing certain projects, did not constitute duress, for it is well settled that threats of civil proceedings or resort to one's legal remedies do not constitute duress [citations omitted]. This is particularly true where, as here, there is no allegation that the charges contemplated were unfounded or baseless in fact. . . . In the instant case, petitioner's superior had the right to prefer charges against her. Petitioner was therefore not threatened with a denial of her legal rights if she refused to consent to the transfer. . . . The consideration for the petitioner's consent in the case at bar was the failure to prefer charges against her in connection with her performance of the duties of the position from which she was transferred.

107 N.Y.S.2d at 639-40.

■ We are bound by the court's finding of voluntariness, supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

■ The remaining question is whether a resigned fireman has a right to receive a disability pension. He clearly does not. At the time plaintiff applied for a disability pension, he had voluntarily resigned as a fireman (RCW 41.18.010(2) ), and he therefore was no longer entitled to pension benefits. *See Freberg v. Board of Trustees of Fire-*

140

*men's Pension Fund,* 128 Ill. App. 2d 369, 262 N.E.2d 22 (1970).

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.