IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  38084-0-III |
| BETHANY ALHAIDARI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| GHASSAN ABDULRAHMAN | ) | |
| ALHAIDARI, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — This appeal presents unique questions of whether Washington

courts should decline subject matter jurisdiction over a child custody dispute or enforce

an earlier child custody decree and agreement entered in Saudi Arabia.  Father Ghassan

AlHaidari challenges the Chelan County Superior Court's exercise of jurisdiction and

award of temporary custody of the child, ZA, to mother Bethany AlHaidari.  RCW

26.27.051, a section of Washington's Uniform Child Custody Jurisdiction and Enforcement Act, controls. We affirm the superior court's exercise of jurisdiction on the basis of RCW 26.27.051(4), which allows Washington courts to exercise jurisdiction, despite a foreign custody decree, if a parent is subject to the death penalty if she returns to the foreign nation.

FACTS

We take the facts from declarations signed by the parties and their witnesses and particularly from the superior court's letter ruling, which includes implied findings of fact. We often refer to the father and mother respectively by their first names. We refer to their daughter simply as ZA, in order to protect her identity and privacy.

Ghassan and Bethany AlHaidari married in Saudi Arabia in November 2013. Bethany is a United States citizen, and Ghassan is a citizen of Saudi Arabia. The couple begot ZA, in Saudi Arabia, in December 2014. ZA is a citizen of both the United States and Saudi Arabia.

Ghassan and Bethany AlHaidari encountered difficulties in their relationship, which strife worsened over the years. The parties went to counseling in an effort to resolve their relationship problems. The problems continued. Bethany claims that Ghassan verbally and physically abused her, sometimes in the presence of their daughter. Ghassan denies these allegations.

In September 2017, Bethany AlHaidari asked Ghassan for a divorce. In Saudi Arabia, if Bethany filed for divorce, the law demanded that she provide a reason and return her dowry. Ghassan could file for divorce without making payment and without giving any reason. Ghassan refused the request for a divorce. Later, however, Ghassan contended that he had divorced Bethany in 2018.

Bethany AlHaidari's legal residence in Saudi Arabia depended on the cooperation of Ghassan because, as husband, he was her legal guardian. In 2018, Bethany requested that Ghassan update her residency status in Saudi Arabia, and he refused. He also refused to allow ZA and Bethany to visit Bethany's family in Washington State.

On February 7, 2019, Bethany AlHaidari's permission from the Saudi Arabia government to reside in the county expired. Bethany no longer held legal status in Saudi Arabia and, therefore, could not file proceedings in the Saudi court system. She also could not pay salaries for her company's employees, nor access her bank account for risk of being deported or jailed. The Saudi government provided her with legal residency status again after Bethany spoke to the media and the *New York Times* published her story.

In November 2018, Bethany filed for divorce. Bethany alleged Ghassan's substance abuse and domestic violence to be reasons for divorce. In January 2019, a Saudi Arabia judge granted the divorce and custody of ZA to Bethany AlHaidari.

No. 38084-0-III
*In re Marriage of AlHaidari*

The Chelan County Superior Court described the January 2019 Saudi divorce

proceedings:

> 1.) Bethany struggled to communicate her position and defend herself because she had no legal counsel and the court appointed interpreter did not speak or understand basic English. 2.) Bethany was denied $26,000 in alimony because Ghassan claimed he "Islamicly divorced" Bethany in May of 2018 and swore under oath he was telling the truth, despite Bethany's testimony and text messages expressing his refusal to divorce her at that time. Bethany's testimony was not considered because she could not provide two male witnesses to support her testimony. 3.) Although Bethany wore a full body black covering that also covered her hair, she was ordered by the judge to leave the courtroom and only return if her entire face, including her eyes, was covered as well. This is particularly relevant because it demonstrates the impact of the accusations and photos Ghassan presented to the Saudi court later in the case in order to discredit Bethany.

Clerk's Papers (CP) at 994.

The parties dispute whether Ghassan AlHaidari refused to see ZA or Bethany

denied him visitation after the January 2019 divorce decree. Regardless, in April of

2019, Ghassan sued Bethany for child visitation. He also asked the court to award

custody of ZA to his mother, AlBandari AlMigren, with whom he lived at the time.

The parties thereafter engaged in a bitter custody battle in the Riyadh, Saudi

Arabia court. Both sides tendered inflammatory accusations about the other in an attempt

to discredit the other's ability to parent. Ghassan denunciated Bethany as being an unfit

mother because she had a learning disability, worked full time, and placed ZA in school.

4

In April 2019, Ghassan AlHaidari posted a video on social media that showed an uncloaked Bethany practicing yoga in Riyadh's American diplomatic quarters. Ghassan also delivered a copy of the video to Saudi police. Police investigated Bethany for criminal charges of public indecency and disrupting public order, a criminal charge that could result in lashings and imprisonment.

In the ensuing custody hearing, Ghassan AlHaidari presented to the Saudi judge a photograph, taken in the United States, of Bethany in a bikini and the video of her practicing yoga. Ghassan also submitted a video of Bethany commenting, during a visit between ZA and her father, that it was "me time." CP at 995.

During the custody battle, Ghassan AlHaidari accused Bethany of gender mixing, adultery, and insulting Islam and Saudi Arabia. Gender mixing, a punishable crime, entails having a male friend. To prove the charge of adultery, Ghassan submitted a photograph of Bethany with a male, who Ghassan claimed to be her boyfriend. The crimes of adultery, insulting Islam, and insulting Saudi Arabia carry a death penalty in Saudi Arabia.

During the custody proceedings, Bethany AlHaidari asserted that Ghassan had agreed that ZA live with Bethany, but now acted from revenge rather than in furtherance of ZA's well-being. Bethany brought to court videos of verbal abuse and death threats from Ghassan and his drug use. The judge declined to view these videos.

5

Ghassan's sister, Leena AlHaidari, testified in court against her own mother, AlBandari AlMigren. Leena averred that her mother was abusive, unfit to parent, and addicted to pills.

In June 2019, Saudi Arabia Judge Abdul-Ellah ibn Mohammed Al-Tuwaijiri ruled that "'though all three candidates were unsuitable to parent, the grandmother was better than the parents.'" CP at 995. The court derided Bethany as a foreigner, who embraced western cultural traditions. The judge lamented that ZA spoke fluent English. According to Judge Tuwaijiri, ZA needed protection from Bethany's western culture and traditions. The Saudi court awarded custody to Ghassan's mother.

Bethany AlHaidari sought assistance from the media, the United States government, and human rights organizations. Meanwhile, Ghassan filed a complaint with the Saudi government alleging Bethany refused visitation. The Saudi government issued an arrest warrant for Bethany and a ten-year travel ban prohibiting her from leaving Saudi Arabia.

Bethany AlHaidari appealed the custody decision issued by Judge Tuwaijiri. An appellate judge ignored the appeal and transferred the case to the civil court to force a settlement. After one unsuccessful settlement conference, a Saudi head judge told the parties that he awarded no one custody and he was closing the case.

Under Saudi law, the lack of a court award of custody resulted in Ghassan AlHaidari, as ZA's father and guardian, retaining all parental rights. Bethany lacked any rights to visitation. The Saudi government barred her from travel with ZA, obtaining an identification document for ZA, taking ZA to the hospital, or enrolling her in school.

Bethany AlHaidari reconciled with Ghassan in order to convince him to reach a settlement affording her custody rights to ZA. Bethany negotiated for a right to travel in exchange for forfeiting all financial claims including child support. In November 2019, someone prepared a prospective agreement labeled as a "deed." The parties did not sign the deed, but the deed contains a court stamp and suggests that Judge Abdulelah Mohammed Altwaijri, at the Personal Status Court judge in Riyadh, approved the agreement.

The November 2019 deed provides:

1. Bethany waives her claim for alimony;

2. Ghassan will pay Bethany 40,000 riyals (approximately $10,800 U.S. dollars, based on 1 SAR = 0.266639 USD);

3. Ghassan will pay the child's education expenses, but, if financially unable, then the parents will alternate paying the child's education expenses annually;

4. The parents have equal custody of the child and a right of first refusal to care for the child when the other parent is unavailable;

5. If a parent dies, the surviving parent is entitled to custody;

7

6. The parents are permitted to marry again without impacting their custody of the child;

7. The parties are required to agree on additional custody plans if a parent decides to live outside Saudi Arabia;

8. The parents are responsible for sending the child to school every day;

9. Bethany is entitled to renew the child's U.S. passport and keep it in her possession while Ghassan maintains the child's Saudi Arabian passport and will give it to Bethany if she desires to travel with the child;

10. Ghassan will issue a permanent travel issue for the child, but Bethany does not have a right to travel abroad with the child without informing Ghassan;

11. The parents may travel with the child to visit family; and

12. Bethany may not travel with the child outside Saudi Arabia for more than 28 days.

In December of 2019, Bethany AlHaidari feigned reconciliation with Ghassan. Thereafter she received his permission to travel to the United States with ZA for a visit with her family in Wenatchee. She left Saudi Arabia with ZA.

Bethany AlHaidari has not returned to Saudi Arabia. Bethany admits dishonesty in her negotiations with Ghassan, but she testified that she agreed to the terms of the November 2019 deed under duress. She agreed to terms in the deed in order to maintain custody of her daughter and to leave Saudi Arabia. She refuses to return to Saudi Arabia or to return ZA to the nation.

PROCEDURE

On January 23, 2020, Bethany AlHaidari initiated this proceeding with a request for the Chelan County Superior Court to exercise temporary emergency jurisdiction and enter a temporary restraining order and a temporary parenting plan. On February 20, 2020, the superior court ruled that it possessed temporary emergency jurisdiction under RCW 26.27.231 and entered an order granting temporary custody to Bethany.

On March 25, 2020, Bethany AlHaidari filed a summons and petition for a permanent parenting plan and for child support. In an April 3, 2020 pleading, Ghassan asked that the Chelan County Superior Court dismiss Bethany's petition for lack of personal jurisdiction over him and subject matter jurisdiction over the custody of ZA. In the alternative, Ghassan requested that the superior court enforce the Saudi Arabia custody order and the November 2019 deed agreement.

In her opposition to Ghassan AlHaidari's requests, Bethany offered declarations from Hala AlDosari and Abdullah S. Alaoudh about Saudi law and human rights violations. Ghassan raised no objection to the expert qualifications of these individuals.

Saudi legal expert Dr. Hala Al-Dosari, who has published on Saudi legal practices, avowed that Saudi Arabia is the only nation in the world that lacks a codified personal status law that addresses custody of divorcing spouse's children. Male clerics, who study

9

only the Quran and traditions of the Prophet Muhammad, function as judges and hold

absolute discretion when awarding child custody.

Abdullah Alaoudh, a legal expert on Saudi Arabia, serves as an academic at

Georgetown University and an adjunct professor at George Washington University in

Islamic political thought. He obtained a degree in Islamic law from Qassim University in

Saudi Arabia. Alaoudh averred:

> In the past few years there have been a systematic human rights
> violation against females, especially those who fought against guardianship
> system or challenge a male guardian. The human rights violations against
> female activists, feminists and females who fought against the male
> guardianship system reached an unprecedented level. Prominent female
> human rights defenders have been arrested for more than two years now,
> tortured, electrocuted, and sexually harassed in jails. Their families were
> threatened and intimidated. In addition, speaking to the media was a
> serious charge in Saudi courts against these female activists and
> individuals.
> Returning a person who fought against a "male guardian" is a very
> risky move that can definitely lead to arrest, torture and serious human
> rights violations in Saudi Arabia. Prominent female activists like Loujain
> al-Hathloul who was returned to Saudi Arabia from the UAE [United Arab
> Emirates] in 2018 led to her arrest, torture, electrocution, sexual harassment
> and other violations.

CP at 735. Alaoudh added that the settlement deed of November 6, 2019 lacks a stamp

from the enforcement court. Therefore, under Saudi law, the deed or agreement cannot

be enforced by a foreign court.

Ghassan AlHaidari presented a declaration from Abdulaziz Alkhorayef regarding

the child custody laws of Saudi Arabia. He averred that a legal code constrained Saudi

judges' decisions on child custody. Bethany AlHaidari disputed this expert's opinions because court records from Saudi Arabia demonstrated that the nation does not have a codified system as alleged by Alkhorayef.

On February 8, 2021, the superior court issued a letter ruling that denied enforcement of the Saudi Arabia court order and the parties' November 2019 deed. The court, instead, ruled that Washington courts possessed jurisdiction under RCW 26.27.051(3). The statute directs a Washington court to reject enforcement of a foreign nation order and to assume jurisdiction in a child custody case if "the child custody law of a foreign country violates fundamental principles of human rights."

In its letter ruling, the superior court reviewed the qualifications of Bethany AlHaidari's experts Hala AlDosari and Abdullah S. Alaoudh and found that both possessed sufficient knowledge, skill, experience, training, and education concerning child custody law in Saudi Arabia. The court observed that Ghassan AlHaidari's expert, Abdulaziz Alkhorayef, practiced law in Saudi Arabia and would risk his profession and personal standing to speak against Saudi Arabia's justice system, given the treatment of Saudi Arabian dissidents by the Saudi government. Furthermore, his testimony contradicted the written court records issued by the Saudi court in the parties' case.

The superior court agreed with Bethany AlHaidari, based on the Saudi Arabia court records, that the Saudi judge afforded Bethany no credibility simply because she

was female. Declarations from individuals who personally witnessed events confirmed

Bethany's declaration testimony. The court highlighted the declaration of Leena

Abdulrahman AlHaidari, Ghassan's sister, who testified that Ghassan abused Bethany,

Ghassan was a neglectful father, Bethany is an excellent mother, and Ghassan's request

for his mother's care for ZA harmed ZA because of the mother's abusive and neglectful

behavior toward her own children and ZA. The superior court deemed Leena's testimony

believable since her declaration placed her at risk with her family relationships and her

nation's society.

In the February 2021 letter ruling, the trial court found that Saudi Arabia law

denies women, non-Muslims, and non-Saudi citizens' due process. The Saudi Arabia

court denied Bethany due process because the judge did not treat Bethany equal to

Ghassan. The court reasoned that due process constituted a fundamental human right.

The superior court also wrote:

> Furthermore, Bethany has provided substantial evidence that she
> entered into this agreement under duress so that she could keep ZA
> protected from the abusive paternal grandmother and because she had been
> threatened with deportation if she did not follow through with Ghassan's
> wishes. Bethany's evidence demonstrates that she was forced into a
> settlement by the Head of the Court in the Personal Status Court of Riyadh
> and was forced to waive all rights and active appeals in the Saudi courts.
> Fairness cannot occur when a party enters into a settlement and waives their
> rights under duress.

CP at 1003.

On April 14, 2021, and after the superior court issued its letter ruling, the Washington Legislature amended RCW 26.27.051 to add a new subsection (4). The amendment became effective on April 14, 2021. LAWS OF 2021, ch. 23, § 1. The amendment declares that the Washington custody court need not defer to a foreign nation's jurisdiction when the nation's law prohibits apostasy and punishes the crime with death and if the nation may subject a parent to the harsh law.

Precisely on the effective date of the amendment, Bethany AlHaidari asked the superior court to also rule in her favor on the terms contained in the new amendment. She noted that her experts had previously opined that, if Bethany returned to Saudi Arabia, Saudi authorities would subject her to prison, if not death, due to her political views advocating for human rights in Saudi Arabia. She averred that she would face a public beheading as the result of blasphemy laws.

During a hearing on May 5, 2021, the superior court discussed the new exception codified in RCW 26.27.051(4). On May 17, 2021, the superior court entered an "order on letter ruling of 02/08/21," which order confirmed its earlier letter ruling. CP at 1155. The order contains an interlineation that reads: "Newly enacted RCW 26.27.051(4) is an additional ground and support for the court's ruling." CP at 1156. During the May 17 hearing, the superior court asked Ghassan AlHaidari's counsel if he desired to comment about the order, and counsel responded in the negative.

13

Ghassan AlHaidari sought review from this appellate court of the superior court's ruling denying enforcement of the Saudi Arabia child custody order and the November 2019 deed. He also sought review of the ruling exercising jurisdiction over child custody of ZA. Our court commissioner granted discretionary review.

## LAW AND ANALYSIS

On appeal, Ghassan AlHaidari complains that the superior court failed to enforce the parties' November 2019 deed agreement and in relying on Saudi Arabia substantive law other than child custody law, when asserting jurisdiction. Thus, according to Ghassan, the court erred in exercising jurisdiction under RCW 26.27.051(3)'s provision referencing human rights. Ghassan also assigns error to the May 17, 2021 order that relies on RCW 26.27.051(4), the death penalty proviso, because the superior court did not mention the statutory subsection in its February 2021 letter ruling. Because we rely only on the death penalty provision, we do not examine RCW 26.27.051(3).

### Application of RCW 26.27.051(4)

Three provisions of Washington's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), ch. 26.27 RCW, control this appeal. First, RCW 26.27.201 declares, in part:

> (1) Except as otherwise provided in RCW 26.27.231 [relating to temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:
> (a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> (b) A court of another state does not have jurisdiction under (a) of this subsection.

Under RCW 26.27.201, a Washington court could exercise jurisdiction over the custody of ZA based on Bethany AlHaidari's intent to reside in Wenatchee with ZA unless some other provision of the UCCJEA applies.

The second statute, RCW 26.27.221 declares:

> Except as otherwise provided in RCW 26.27.231, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under RCW 26.27.201(1) (a) or (b) and:
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under RCW 26.27.211 or that a court of this state would be a more convenient forum under RCW 26.27.261.

Thus, as argued by Ghassan AlHaidari, unless another UCCJEA provision applies, the Washington superior court needed to respect and enforce the child custody ruling of the Saudi Arabia court since the foreign court never determined it lacked exclusive continuing jurisdiction.

The third and governing UCCJEA statute, RCW 26.27.051, reads, in pertinent part:

15

(1) A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying Articles 1 and 2 [including RCW 26.27.221].

(2) Except as otherwise provided in subsection (3) or (4) of this section, a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this chapter must be recognized and enforced under Article 3.

(3) A court of this state need not apply this chapter if *the child custody law of a foreign country violates fundamental principles of human rights*.

(4) A court of this state need not apply this chapter if the law of a foreign country holds that *apostasy, or a sincerely held religious belief or practice, or homosexuality are punishable by death, and a parent or child may be at demonstrable risk of being subject to such laws*. For the purposes of this subsection, "apostasy" means the abandonment or renunciation of a religious or political belief.

(Emphasis added.) The Washington Legislature amended RCW 26.27.051 to include subsection 4 in 2021, with the proclaimed effective date of April 12, 2021. The amendatory act declared:

NEW SECTION. **Sec. 2.** This act applies to child custody proceedings or proceedings to enforce a child custody determination pending as of the effective date of this section, or commenced on or after the effective date of this section.

NEW SECTION. **Sec. 3.** This act is necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions, and takes effect immediately.

LAWS OF 2021, ch. 23, § 1. Section 2 of the bill directed application of the new law to child custody cases then pending.

Ghassan AlHaidari concedes that the superior court could have based its ruling in part on RCW 26.27.051(4), despite the new subsection's adoption after the February 2021 letter ruling. He instead argues that the superior court never referenced the new subsection in its February 8, 2021 letter ruling and thus the May 2021 written order could not reference subsection (4).

Of course, the superior court failed to mention the 2021 amendment in its February ruling, because the amendment did not yet exist. Ghassan cites no authority for the proposition that the court may not add an additional basis for its ruling between the time of issuing a letter ruling and signing an order confirming the ruling. A court's memorandum ruling remains subject to change until the signing of a formal written judgment. *Marsh v. Commonwealth Land Title Insurance Co.*, 57 Wn. App. 610, 619, 789 P.2d 792 (1990). Ghassan does not complain that the superior court ruled on an issue, to which the court never afforded him an opportunity to respond.

Substance of RCW 26.27.051(4)

To repeat, a Washington court need not enforce a decree of another nation's child custody decree and may exercise jurisdiction over custody if the law of the foreign country punishes "apostasy" by death. RCW 26.27.051(4). The subsection defines "apostasy" as "the abandonment or renunciation of a religious or political

17

belief." Because of the word "renunciation," the parent need not have been a former believer of a religious belief.

Ample evidence supports the superior court's ruling that Bethany AlHaidari faced a death sentence if she returned to Saudi Arabia because of both her religious and political beliefs. Saudi legal experts and Bethany testified to her danger on any return. Ghassan AlHaidari does not challenge the superior court's substantive ruling on "apostacy," only the court's adding of that ground in the final order without having mentioned the basis earlier. In his brief, Ghassan does not dispute that Bethany could garner the death sentence on her return to Saudi Arabia.

Without citing any law, Ghassan AlHaidari complains that the superior court refused to enforce the November 2019 deed. Ghassan also assigns no error to the trial court's finding that Bethany signed the deed under duress. A contract is voidable when signed under duress. *Pleuss v. City of Seattle*, 8 Wn. App. 133, 137, 504 P.2d 1191 (1972).

## CONCLUSION

We affirm the superior court's exercise of personal jurisdiction over Ghassan AlHaidari for purposes of child custody and exercise of subject matter jurisdiction over the child custody of ZA. We remand for further proceedings before the Chelan County Superior Court.

18

No. 38084-0-III
*In re Marriage of AlHaidari*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.

19