# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| MARCUS D. SMITH, | No.  60047-1-II |
| Appellant, | |
| v. | |
| NORTHWEST MOTORSPORT, INC., and NORTHWEST MOTORSPORT, LLC, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Marcus D. Smith challenges the superior court's (1) order denying his motion to vacate a settlement agreement, (2) order denying reconsideration, and (3) award of attorney fees to Northwest Motorsport, LLC.  Smith argues the superior court erred in denying the motion to vacate the settlement agreement because Smith included new facts in his reply brief that demonstrated economic duress, which Northwest Motorsport allegedly failed to object to.  Smith presents no argument on his challenge to the superior court's order denying reconsideration or the attorney fees award.

Because Smith fails to demonstrate economic duress by clear, cogent, and convincing evidence, we hold the superior court did not abuse its discretion when it denied Smith's motion to vacate the settlement agreement and when it denied Smith's motion for reconsideration.  Because Smith presents no argument regarding the award of attorney fees, we decline to address his challenge.  Accordingly, we affirm the superior court's order denying the motion to vacate the settlement agreement, order denying the motion for reconsideration, and award of attorney fees to Northwest Motorsport.

No. 60047-1-II

Finally, Northwest Motorsport requests attorney fees on appeal, as well as sanctions against Smith and his counsel for pursuing frivolous litigation. Because Smith breached the terms of his settlement agreement and because Northwest Motorsport is the prevailing party, we award Northwest Motorsport attorney fees on appeal pursuant to RAP 18.1(a). Because Smith presented virtually no citation to legal authority to support his arguments and, based on the overwhelming evidence in the record, presented no debatable issue upon which reasonable minds might differ, we hold Smith's appeal is frivolous and sanction Smith and his counsel jointly and severally pursuant to RAP 18.9(a).

FACTS

A.    BACKGROUND

Smith is a former executive of Northwest Motorsport, LLC. Northwest Motorsport terminated Smith in January 2020, following various workplace incidents and a human resources investigation. Then, in January 2023, Smith, as a self-represented litigant, filed a complaint against Northwest Motorsport under the Washington Law Against Discrimination,[1] alleging wrongful termination based on racial discrimination[2] and retaliation. Smith requested $10 million in damages. However, Smith never provided any evidence of his claims.

Northwest Motorsport moved for summary judgment, arguing in part that Smith could not substantiate his claims. In response to the summary judgment motion, Smith filed a motion to amend his complaint. In his motion to amend, Smith wrote:

---

[1]  Chapter 49.60 RCW.

[2]  Smith identifies as a Black person.

2

[I]t has become apparent that I should have written my original complaint differently. . . .

. . . .

Currently, there are a number of causes of action in my complaint. Also, currently, [Northwest Motorsport has] filed for summary judgment on all of these causes of action.

I believe that I could draft a declaration in an attempt to support these causes of action and keep them alive post summary judgment. *However*, after reading [Northwest Motorsport's] materials and discussing them with an attorney, I believe that I might have difficulties at trial with respect to these causes of action. This being the case, I am *abandoning the majority of these claims, and not including them in the proposed amended complaint*.[3]

Clerk's Papers (CP) at 470-71 (emphasis in original). Smith never responded to the substance of Northwest Motorsport's motion for summary judgment.

The superior court denied Smith's motion to amend as time-barred. The superior court then granted summary judgment in favor of Northwest Motorsport and dismissed Smith's complaint.

The week following dismissal of the complaint, Smith retained counsel, Carl Colbert.[4] Smith's counsel filed a motion for reconsideration of the superior court's order granting summary judgment to Northwest Motorsport and dismissing Smith's complaint. In the motion for

---

[3] Smith's "proposed amended complaint" is not part of the record on appeal. However, the record suggests that Smith attempted to advance an entirely new claim "based on an alleged promise [from Northwest Motorsport] to grant him some unspecified 'equity' interest." Clerk's Papers (CP) at 486.

[4] Smith had previously retained counsel in September 2023 prior to Northwest Motorsport's motion for summary judgment. However, that counsel withdrew less than two weeks later. Based on facts described in a Northwest Motorsport motion at the trial court, it appears that Smith's counsel withdrew because Smith wanted to proceed with litigation when he could not substantiate his claims.

reconsideration, Smith's counsel discredited Smith's discrimination claims, stating: "'Unfortunately, acting as a pro se, [Smith] drafted his complaint with a focus on issues of race rather than those of breach of contract. . . . After recently conferring with counsel, [Smith] realized that he should have drafted his Complaint differently.'" CP at 487 (second alteration in original). The superior court denied Smith's motion for reconsideration.

Northwest Motorsport then filed a motion for attorney fees and costs pursuant to CR 11 and RCW 4.84.185. Northwest Motorsport requested $122,868.71 for attorney fees and costs that "were reasonably incurred defending against Smith's frivolous lawsuit." CP at 484. Meanwhile, Smith appealed the superior court's orders denying his motion to amend his complaint, granting summary judgment in favor of Northwest Motorsport, and denying reconsideration (Appeal).

The superior court awarded Northwest Motorsport $75,653.71 in attorney fees and costs pursuant to CR 11 and RCW 4.84.185. In the order and judgment granting fees to Northwest Motorsport, the superior court stated, in relevant part:

> 1.     [Northwest Motorsport's] Motion for Fees and Costs asserts that in [Smith]'s Complaint and subsequent filings with the Court, [Smith] made frivolous claims in violation of CR 11 and RCW 4.84.185. [Smith], in his Opposition, concedes the claims were frivolous.
>
> 2.     [Northwest Motorsport] is entitled to compensation pursuant to CR 11 and/or RCW 4.84.185.

CP at 597. Smith's counsel then withdrew.

B.    BOND NEGOTIATIONS

Despite the pending Appeal, Smith did not post a supersedeas bond following the judgment in favor of Northwest Motorsport. Northwest Motorsport proceeded with collection efforts by

filing an abstract of the judgment in superior court. A judgment lien was placed on various properties Smith owned, including investment properties and his primary residence.

Smith filed a "Proposed Order for a Bond" with the superior court, which stated: "I am proposing a bond in the amount of $115,000.00 and no more than $125,000.00 dollars." CP at 85. A court date was scheduled to hear Smith's motion on the bond.

According to Smith, he wanted to "obtain a bond to stay enforcement of [Northwest Motorsport]'s judgment while he pursued his appeal." CP at 110. Smith determined it was impossible for him to post a bond without refinancing one of his properties. Smith was also separately hoping to gain "a bid bond for a potential (annualized) contract in the amount of $1,200,000.00" and "refinanc[e] another property that ha[d] a high cost of interest." CP at 2. Smith claimed his lack of access to funds "prevented funding for [his] business and next business ventures." CP at 2. However, Smith's lender refused to make a loan while Northwest Motorsport's lien encumbered Smith's title.

Smith contacted Northwest Motorsport to discuss an arrangement that would allow Smith to refinance his primary residence. Northwest Motorsport was not willing to release its judgment lien; however, it offered to subordinate its lien to Smith's lender in exchange for the bond. On June 17, 2024, Northwest Motorsport prepared draft subordination documents and sent them to Smith.

The day after Northwest Motorsport agreed to subordinate its lien to Smith's lender in exchange for the bond, Smith unilaterally e-mailed the superior court to strike the court date on his motion for a bond. Smith's e-mail stated: "I have a scheduled court date on Friday, June 21st

5

to discuss proposed order for a bond. In the meantime, this has been worked out with opposing counsel and I wish to cancel the court date." CP at 87.

In response to Smith's message to the superior court, Northwest Motorsport e-mailed Smith:

> You are free to strike your own motion, and Northwest Motorsport has no objection in that regard. However, in light of your statement to the Court that "this has been worked out with opposing counsel," we wish to again clarify that there is, at present, no agreement between the parties regarding any lien / bond arrangement. Northwest Motorsport is attempting to cooperate in good faith with your request, but all relevant parties must review, approve, and sign a complete set of deal documents (including the form of bond) before any binding agreement is in place.

CP at 87. Smith then replied: "Agreed, I . . . misspoke about the agreement." CP at 87.

Later that same day, Smith reached out to Northwest Motorsport and informed it that his lender would not accept a subordination. The lender required an "'unconditional release'" of Northwest Motorsport's judgment before it made any loan to Smith. CP at 90. Smith further wrote to Northwest Motorsport:

> I am willing to consider other language that stipulates that I will fund the Supersedeas Bond. This is a conundrum and what other options or alternatives can we work out here?
>
> In good faith, I assumed that this would all work out and hence; why I canceled the court meeting on Friday.
>
> My escrow and title are ready to close and this is the last part to coordinate.
>
> Please advise as to other agreements that are possible; I would like to fund this bond this week.

CP at 90. Smith proceeded to send Northwest Motorsport various proposals that all included Northwest Motorsport entering a release of its judgment lien. Then, on June 20, Northwest Motorsport replied to Smith:

6

Your claims against Northwest Motorsport resulted in a judgment against you for frivolous litigation. When your appeal was filed, your then counsel was asked if you would be posting a bond. The answer was "no." Since then, your counsel withdrew and has not been replaced, you have missed two filing dates for your opening brief, and you have failed to even make arrangements for a proper record on appeal.[5] Your appeal, which we regard as without basis, continues to cause Northwest Motorsport to incur unnecessary additional fees and costs. And of significance here, since you filed your appeal, you have had ample time both to seek new counsel and to post a bond.

Recently, you apparently decided you now want to post a bond. But in seeking a bond, you have no right to demand that Northwest Motorsport assist you in any way—including releasing lien rights. Northwest Motorsport considered a rough proposal to potentially subordinate its judgment lien on a single property and went so far as to prepare a possible subordination agreement. But your lender summarily rejected that document. Northwest Motorsport is not willing to release its judgment lien in its entirety, which is what your lender appears to require. And, against that backdrop, the proposed bond language you provided—while also potentially problematic—is moot. For similar reasons, your most recent email, apparently proposing a cash bond of some kind, does not appear to resolve any of the underlying issues.

Northwest Motorsport already has incurred additional expense in communicating with you, in trying to determine what exactly would be required by your lender, and in drafting a proposed document—which was then immediately rejected by your lender. You have not offered to reimburse Northwest Motorsport for its efforts, and you rejected our suggestion that you allow us to speak directly to your lender. The most recent emails you have circulated contain various undocumented scenarios under which a bond would be posted, but only if Northwest Motorsport enters some form of release. Your original request was complicated and has only become more so as you have suggested additional elements including additional properties, payments into the Court registry and so on—and all of this is predicated on Northwest Motorsport at its expense drafting a document for your benefit that does not exist and that would reflect a proposed agreement that also does not exist. Against that backdrop, Northwest Motorsport is not willing to invest further resources concerning your desire to bond the judgment and further discussions regarding a bond are pointless. The bottom line is that if you wish to post a bond, you should do so, but Northwest Motorsport will not be involved.

---

[5] While Smith engaged in negotiations with Northwest Motorsport, Smith missed multiple filing dates for the Appeal. This court granted Smith two extensions to file his opening brief, with the final extension deadline set for July 15, 2024. Smith never filed an opening brief for the Appeal.

One alternative is for you to simply pay the judgment and dismiss the appeal. In response, Northwest Motorsport would provide a Satisfaction of Judgment, resulting in the extinguishment of the judgment lien. There appear to be sufficient funds available for you to pay the Judgment, as the payoff amount is well under the $125,000 you are evidently prepared to finance for a bond. A payoff figure was provided to your escrow agent at their request. But if we understand correctly, you are unwilling to pay the Judgment amount and dismiss the appeal. In any event, Northwest Motorsport is not obligated to find you a way to bypass the judgment without paying it and without dismissing the appeal.

. . . To the extent that you have timing issues, they are entirely of your own making as the issue of a bond could have and should have been addressed months ago. Finally, we did not do anything to induce you to cancel your hearing that was scheduled for tomorrow. You struck that hearing on your own and without any agreement on our part. In fact, you misrepresented to the Court in your email that there was some agreement and when we pointed that out, you said you "misspoke."

Please let us know if a bond is posted.

CP at 93-94.

After this communication, Smith sent two additional "scenarios" to Northwest Motorsport, which again included Northwest Motorsport releasing its lien. CP at 93. Northwest Motorsport again replied it was not willing to engage in further discussions with Smith about Smith posting a bond and based on the scenarios Smith proposed, it was not clear what exactly Smith wanted Northwest Motorsport to do.

On June 21, Smith made the following proposal to Northwest Motorsport:

If I dismiss the appeal with an agreement sent from your firm today and reducing the judgement [sic] from its current outstanding balance from $75k to $50k, I will drop the appeal with a reply by 5:00 pm and agreement today.

CP at 92. Northwest Motorsport countered:

We are authorized to resolve this matter by your payment of $70,000 and your dismissal of the appeal. This proposal is open until 5:00 p.m. today and can be fully documented Monday morning if you accept. No further discount is available.

CP at 92. Smith accepted Northwest Motorsport's counteroffer.

C.      SETTLEMENT AGREEMENT

Northwest Motorsport prepared the settlement agreement. The settlement agreement provided that in exchange for the resolution of their litigation, Northwest Motorsport would accept $70,000 in full satisfaction of the judgment it had against Smith. Further, Smith would release Northwest Motorsport from any existing claims and the parties would execute a stipulation for dismissal of the Appeal. The settlement agreement also stated:

> 6.    In the event that any party or Released Party incurs attorney's fees or costs as a result of a breach of this Agreement, the non-breaching party or Released Party shall be entitled to recover such attorney's fees and costs from the breaching party.

CP at 61. Smith signed the settlement agreement on June 28, and Northwest Motorsport countersigned on July 2. Northwest Motorsport also signed a satisfaction of judgment, and Smith and Northwest Motorsport signed a stipulation for voluntary withdrawal of the Appeal.

Smith's loan closed on July 5.[6] Northwest Motorsport was wired $70,000 from escrow, and Northwest Motorsport filed the satisfaction of judgment and stipulation for voluntary withdrawal of appeal with the superior court and this court.

D.      MOTION TO VACATE SETTLEMENT AGREEMENT

1.      Motion Filings

Also on July 5, at 10:55 a.m., Northwest Motorsport e-mailed Smith, advising him that the stipulation and satisfaction of judgment had been filed with the courts. Then, approximately 90

---

[6] Because Smith refinanced his primary residence, Smith had a three-day rescission option prior to closing. Smith did not exercise the option.

minutes later, Smith filed with superior court a "Motion to Strike and/or Null in Void Agreement with 'Litigation' including Pierce County 'The Judgement' [sic] and Washington Court of Appeals, Division II Case No. 591448 'The Appeal'" (Motion to Vacate Settlement Agreement).[7,8] CP at 602. In his motion, Smith claimed he signed the settlement agreement "under duress." CP at 602.

Smith's Motion to Vacate Settlement Agreement argued that Northwest Motorsport "agreed to a release" based on Smith posting a $125,000 bond, but then told Smith's lender it would not release its judgment lien unless Smith dropped his appeal. CP at 1. Because of this, Smith claimed:

> With no access to funds, and Judgement [sic] looming; it then prevented me from gaining a bid bond for a potential (annualized) contract in the amount of $1,200,000.00 dollars. Cross Country Mortgage errored [sic] in a refinance that could have prevented all of this along with Chicago Title not upholding their original agreement with me. It also prevented me from refinancing another property that has a high cost of interest, and prevented funding for my business and next business ventures that are well documented.[9]

CP at 2.

---

[7] Smith initially failed to note his Motion to Vacate Settlement Agreement for the superior court motion docket. On July 10, he refiled the Motion to Vacate Settlement Agreement twice and noted the motion for hearing.

[8] Smith also filed an unsigned "Stipulation to Reject Voluntary Withdraw[a]l of Appeal" and an unsigned "Motion to Stay Until Judgment is Adjudicated in the Superior Court," requesting a stay of the appeal pending resolution of the Motion to Vacate Settlement Agreement. CP at 98, 101. Our court commissioner issued a ruling granting "the stipulated motion to withdraw the appeal" and dismissed the appeal "without prejudice to any further proceedings related to the validity of the settlement agreement." CP at 4.

[9] Smith did not attach any supporting documentation regarding his business ventures in his motion.

Northwest Motorsport objected to Smith's Motion to Vacate Settlement Agreement and requested fees and costs based on breach of contract, CR 11, and RCW 4.84.185. Northwest Motorsport argued that Smith "fraudulently entered the settlement to obtain a Satisfaction of Judgment while planning to move to set the remainder of the settlement aside as soon as the Satisfaction was filed." CP at 37. Northwest Motorsport also argued that Smith's claim of duress failed because Smith did not provide any evidence of duress, let alone evidence that met the clear, cogent, and convincing standard.

The hearing on Smith's Motion to Vacate Settlement Agreement was set for July 26. On July 23, Smith's prior counsel, Colbert, filed a notice of appearance. Then, on July 24, Smith filed a reply in support of his Motion to Vacate Settlement Agreement.

Smith argued for the first time in his reply brief that when he and Northwest Motorsport came to an agreement regarding settlement, Smith never agreed to drop the Appeal. Instead, Smith asserted that the "agreement was merely that [Northwest Motorsport] would be paid a certain amount in exchange for a satisfaction of judgment." CP at 111. Then, Smith argued, "[a]t the last minute . . . rather than continue according to the terms that [Northwest Motorsport] had struck with [Smith], [Northwest Motorsport] added the demand that [Smith] drop his appeal." CP at 111. Smith alleged that Northwest Motorsport was aware Smith "was in dire straits financially" and strung him along during the settlement negotiations to make "him more and more desperate" before the late demand to drop the Appeal. CP at 112. Smith asserted:

> [Smith] was, indeed, in dire straits and desperately needed financing for his personal wellbeing as well as to keep his properties and businesses going. [Smith] would have lost various of his properties and business opportunities costing him hundreds of thousands of dollars if he did not close his refinance.

No. 60047-1-II

CP at 112 (citation omitted).

Smith attached a single declaration in support of his reply. Smith's declaration, in its entirety, stated:

> I, MARCUS D. SMITH, hereby declare and state as follows:
>
> 1.     I am the Plaintiff in the above captioned action.
>
> 2.     I am fully competent to testify herein.
>
> 3.     I worked with my attorney to write the factual assertions contained in my reply brief filed on even date herewith.
>
> 4.     I worked with him carefully to make these recitations of fact completely accurate and made sure that the final copy that was filed with the Court was completely true and correct.

CP at 117. Smith did not include any exhibits or other documentation with his declaration.

On July 24, Northwest Motorsport filed an objection to Smith's reply brief and requested the superior court strike the new evidence Smith presented because it was not in strict reply. Northwest Motorsport argued, in part, that Smith's contentions were "conclusory and unconnected to any alleged facts" and that "the actual record clearly and directly refutes Smith's narrative." CP at 120, 121.

2.     Hearing on Motion to Vacate Settlement Agreement

During the hearing on July 26, Smith's counsel presented the same argument as in Smith's reply brief filed on July 24—that Northwest Motorsport changed the terms of the settlement at the last minute. The superior court asked Smith's counsel about any written document that indicated Smith's alleged original agreement. Smith's counsel replied:

Those were—there is no document that memorializes that. These were communications between Mr. Smith, Mr. Goldfarb, and sometimes Mr. Ritchie, who is one of Mr. Goldfarb's associates.

[COURT]: No email, no memos, just Mr. Smith's say-so.

[SMITH'S COUNSEL]: Mr. Smith's say-so. And we can verify that what he's saying is correct. We can verify it because we know that [Northwest Motorsport] wrote yesterday—or the day before yesterday a very detailed response to Mr. Smith's reply brief. In that detailed response [Northwest Motorsport] doesn't provide a declaration that [it] did not make this agreement. It would have been very easy to do that. Instead [Northwest Motorsport] simply recites the fact that [it] doesn't believe there's enough evidence in the record.

1 Verbatim Rep. of Proc. (VRP) at 7-8.

The superior court then asked about Northwest Motorsport's filing. The superior court had not seen Northwest Motorsport's objection to Smith's reply, nor did the court have a copy at the hearing. However, the superior court understood Northwest Motorsport's objection: "I understand. Your point is that there were matters raised in strict reply that were new." 1 VRP at 8.

Smith's counsel proceeded to argue that Northwest Motorsport caused Smith's economic duress because of its alleged "[bait] and switch" during settlement negotiations. 1 VRP at 10. Smith's counsel then referenced Northwest Motorsport's July 24 objection, arguing that Northwest Motorsport did not deny Smith's bait and switch argument:

[SMITH'S COUNSEL]: . . . And there is a reason why [Northwest Motorsport], who took the time to write a multi-page response yesterday, didn't make that statement.

[COURT]: Well, don't refer to something that's not in the record. That just doesn't help me at all.

[SMITH'S COUNSEL]: Okay. So I'll step back and say there's been no response whatsoever. Since it's not in the record, I'm trying to give the most benefit

possible to the defendants because they did file it. But there's nothing in the record then.

[COURT]: Okay.

1 VRP at 11.

In response, Northwest Motorsport pointed to the documentation they filed in response to Smith's motion, which included e-mails leading up to the settlement agreement that contradicted Smith's version of events. Northwest Motorsport argued that any financial duress Smith suffered was of his own making and Smith failed to demonstrate exigent circumstances. In rebuttal, Smith's counsel argued:

> But those emails would not have happened had he not been under the economic duress that he was under based upon the being led down the garden path and then the bait and switch.
>
> [COURT]: So—
>
> [SMITH'S COUNSEL]: Both of which are the—sort of the illegal and inappropriate behaviors that led to this claim.
>
> [COURT]: What I understood the position to be was that this issue of dismissal of the appeal was inserted at the last minute after the settlement document was proposed. It appears to me it was contemplated all along.
>
> [SMITH'S COUNSEL]: That's not Mr. Smith's recollection and that's not his testimony. His testimony is that—
>
> [COURT]: That's what I garnered from the email chain.

1 VRP at 16.

The superior court denied Smith's motion, stating:

> So economic duress is an extraordinary remedy. The Court does favor the resolution of disputes by contract settlement agreements. I am not persuaded with clear[,] cogent[,] and convincing evidence that there was economic duress and I'm going to deny the motion.

1 VRP at 17.

Northwest Motorsport requested attorney fees based on breach of contract. Smith objected on the grounds that even though he failed to prove duress by clear, cogent, and convincing evidence, he was "close." 1 VRP at 18. The superior court awarded $13,695 in attorney fees to Northwest Motorsport.

Smith moved for reconsideration. In his motion, Smith argued that Northwest Motorsport failed to object to Smith's reply brief and then tactically erred by not requesting a continuance. Accordingly, Smith asserted that the contents of his reply brief were "*unopposed and uncontroverted*." CP at 134 (emphasis in original). Smith then argued:

> It follows then, that since [Smith's] unopposed and uncontroverted reply materials quite clearly made his case for economic duress and business compulsion by clear, cogent and convincing evidence, he should have prevailed on July 26.

CP at 134. The superior court denied Smith's motion for reconsideration.

Smith appeals.

## ANALYSIS

Smith argues the superior court erred when it (1) denied his motion to vacate the settlement agreement, (2) denied his motion for reconsideration, and (3) awarded Northwest Motorsport attorney fees. We disagree.[10]

---

[10] In his reply brief filed in this appeal, Smith moves to strike materials "discussing unrelated aspects of the Parties' prior litigation history." Reply Br. of Appellant at 9. Smith argues that those "materials" have "nothing to do with the issue before the Court in this appeal." Reply Br. of Appellant at 9-10 (italics omitted). However, Smith fails to identify what "materials" he wants stricken. Reply Br. of Appellant at 9.

A.    MOTION TO VACATE SETTLEMENT AGREEMENT

1.    Legal Principles

We review a superior court's ruling on a motion to vacate for abuse of discretion. CR 60(b); *Rush v. Blackburn*, 190 Wn. App. 945, 956, 361 P.3d 217 (2015). A superior court's decision to enforce a settlement agreement pursuant to CR 2A is also reviewed for abuse of discretion. *Morris v. Maks*, 69 Wn. App. 865, 868, 850 P.2d 1357, *review denied*, 122 Wn.2d 1020 (1993). "An abuse of discretion occurs when a decision of the trial court is manifestly unreasonable or based on untenable grounds or reasons." *Id.*

Settlement agreements are governed by principles of contract law. *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). "Washington follows the objective manifestation theory of contracts, which has us determine the intent of the parties based on the objective manifestations of the agreement, rather than any unexpressed subjective intent of the parties." *Id.* "'The whole panoply of contract law rests on the principle that one is bound by the contract which he voluntarily and knowingly signs.'" *Cruz v. Chavez*, 186 Wn. App. 913, 920, 347 P.3d 912 (2015) (internal

---

Smith also moves to strike the "'Supplemental Declaration of Michael A. Goldfarb Regarding Objection Submitted on July 24, 2024.'" Reply Br. of Appellant at 10. Smith claims the declaration was filed "in direct violation [of] RAP 9.1 which limits review to matters in the record at the time the order challenged below was entered." Reply Br. of Appellant at 10.

We note that Smith completely fails to cite to the record. Not only that, Smith misstates RAP 9.1, which *does not* support his argument that review is limited to matters in the record at the time of the challenged order. *See generally* RAP 9.1. Furthermore, the motions to strike contained in Smith's reply are in violation of RAP 17.4(d), which provides "[a] party may include in a brief only a motion which, if granted, would preclude hearing the case on the merits." The granting of either motion would not preclude a hearing on the merits of the case. *See also Hays Elliott Props., LLC v. Horner*, 25 Wn. App. 2d 868, 875 n.8, 528 P.3d 827 (2023) (A motion raised in a reply brief is improper under RAP 17.4(d), "which permits a motion in an opening or responsive brief, to which the opposing party has an opportunity to reply."). Thus, we deny Smith's motions to strike raised in his reply.

quotation marks omitted) (quoting *H.D. Fowler Co. v. Warren*, 17 Wn. App. 178, 180, 562 P.2d 646 (1977)). Thus, when a party signs a contract, there is a presumption that the party has objectively manifested assent to its contents. *Id.* at 920-21.

However, a settlement agreement may be void in cases of "fraud, deceit, misrepresentation, coercion, or other wrongful acts." *Id.* at 921. Economic duress, or business compulsion, is a circumstance where a party may repudiate a settlement agreement. *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 944, 640 P.2d 1051 (1982). An individual claiming duress must demonstrate that the other party's wrongful and oppressive conduct compelled the individual to involuntarily enter into the agreement. *Puget Sound Power & Light Co. v. Shulman*, 84 Wn.2d 433, 443, 526 P.2d 1210 (1974); *see also Retail Clerks*, 96 Wn.2d at 944-45; *Barker v. Walter Hogan Enterprises, Inc.*, 23 Wn. App. 450, 452-53, 596 P.2d 1359 (1979). However, a threat "to exercise a legal right made in good faith is neither duress nor coercion in law." *Pleuss v. City of Seattle*, 8 Wn. App. 133, 137, 504 P.2d 1191 (1972).

A claim of duress requires proof of more than financial embarrassment or reluctance to enter into the agreement. *Retail Clerks*, 96 Wn.2d at 944 ("The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient."); *see also Puget Sound Power & Light Co.*, 84 Wn.2d at 443. "Generally, circumstances must demonstrate a person was deprived of his free will at the time he entered into the challenged agreement." *Retail Clerks*, 96 Wn.2d at 944-45. Duress must be demonstrated through clear, cogent, and convincing evidence. 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 301.10, at 189 (7th ed. 2019); *see In re Welfare of J.N.*, 123 Wn. App. 564, 576-77, 95 P.3d 414 (2004), *review denied*, 154 Wn.2d 1003 (2005).

17

2.      Smith Fails to Demonstrate Duress

Smith's opening brief contains no citation to any legal authority; instead, he copies the facts section from his reply brief filed in superior court into the argument section of his opening brief on appeal. It is well established that "[w]e do not consider conclusory arguments that do not cite authority." *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012); RAP 10.3(a)(6); *see, e.g.*, *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *C.A. Carey Corp. v. City of Snoqualmie*, 29 Wn. App. 2d 890, 909-10, 547 P.3d 247, *review denied*, 3 Wn.2d 1012 (2024); *Cook v. Brateng*, 158 Wn. App. 777, 794, 262 P.3d 1228 (2010). Thus, Smith's deficient briefing alone dooms his appeal.[11]

Regardless of his deficient briefing, Smith fails to prevail on the merits. While we need not venture into the merits to determine this appeal, we do so to demonstrate Smith's and his counsel's disregard for our judicial process, and to make clear that we disavow such conduct.

Here, the record shows that Smith and Northwest Motorsport engaged in prior litigation. The matter was dismissed on summary judgment in favor of Northwest Motorsport. The superior court awarded Northwest Motorsport $75,653.71 in fees and costs pursuant to CR 11 and RCW 4.84.185. Smith appealed. Smith failed to post a supersedeas bond pending the Appeal.

---

[11] Not only does Smith's briefing doom his appeal, but it is also a violation of RAP 10.3, which provides to the parties briefing instructions that are necessary for our review. *See generally* RAP 10.3. As stated above, Washington case law unequivocally holds that such deficient briefing as we have here—one that fails to cite to *any* authority—does not merit our consideration. *E.g.*, *In re Muenster*, 195 Wn.2d 276, 283, 457 P.3d 1139, *cert. denied*, 141 S. Ct. 662 (2020); *SYNNEX Corp. v. Dep't of Revenue*, 34 Wn. App. 2d 857, 876, 572 P.3d 1214 (2025); *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014); *West*, 168 Wn. App. at 187.

Accordingly, Northwest Motorsport recorded its judgment, and a lien was placed on Smith's properties.

The record also shows that Smith wanted to refinance one or more of his properties. It is not clear whether Smith wanted to do so solely to obtain cash to post a bond or whether it was for other business purposes unrelated to the proceedings with Northwest Motorsport—indeed, Smith makes both contentions. Northwest Motorsport offered to subordinate its lien and even prepared subordination documents for Smith. However, Smith's *lender* rejected the possibility of subordination and would accept only a satisfaction of judgment from Northwest Motorsport. Northwest Motorsport clearly stated to Smith that it was unwilling to release its lien rights, and indeed, informed Smith it no longer wished to continue bond negotiations.

Then, Smith began making several settlement proposals to Northwest Motorsport, which Northwest Motorsport rejected. On June 21, *Smith* made a settlement offer in which he would dismiss the Appeal:

> *If I dismiss the appeal* with an agreement sent from your firm today and reducing the judgement [sic] from its current outstanding balance from $75k to $50k, I will drop the appeal with a reply by 5:00 pm and agreement today.

CP at 92 (emphasis added). After receiving this settlement proposal from Smith, Northwest Motorsport proposed a counteroffer that incorporated Smith's proposal to dismiss the Appeal but required a payment of $70,000 from Smith. Smith accepted Northwest Motorsport's counteroffer. The parties signed the settlement agreement a week later.

Thus, the record unequivocally shows that Northwest Motorsport did not engage in wrongful and oppressive conduct when negotiating the settlement agreement. *Puget Sound Power & Light Co.*, 84 Wn.2d at 443. By recording its judgment against Smith, Northwest Motorsport

was exercising in good faith a legal right it possessed—the exercise of the right is not coercion or duress as a matter of law. *Pleuss*, 8 Wn. App. at 137. Northwest Motorsport also engaged in good faith negotiations with Smith when it offered to subordinate its lien and prepared subordination documents at its own expense to assist Smith with his efforts to refinance his properties.

Furthermore, it was *Smith* who offered to dismiss the Appeal if a settlement was reached, doing so a full week before he signed the settlement agreement and 11 days before the agreement was fully executed. Based on the evidence showing that it was Smith who offered to dismiss the Appeal, it cannot be said that he was deprived of his free will when he signed the settlement agreement. *Retail Clerks*, 96 Wn.2d at 944-45. To the extent Smith felt compelled to offer to drop the Appeal, there is nothing in the record to show that it was at the urging of Northwest Motorsport. Indeed, Smith even stated in his Motion to Vacate Settlement Agreement it was his *lender* who prompted his financial stress:

> With no access to funds, and Judgement [sic] looming; it then prevented me from gaining a bid bond for a potential (annualized) contract in the amount of $1,200,000.00 dollars. *Cross Country Mortgage errored* [sic] *in a refinance* that could have prevented all of this along with *Chicago Title not upholding their original agreement* with me. It also prevented me from refinancing another property that has a high cost of interest, and prevented funding for my business and next business ventures that are well documented.

CP at 2 (emphasis added). Although the inability to gain a bid bond for a contract and desire to refinance a property at a high interest rate may have caused Smith financial stress, those circumstances do not rise to the level of duress. *Retail Clerks*, 96 Wn.2d at 944.

Moreover, Smith failed to provide any supporting documentation or evidence regarding his financial circumstances or business ventures. Instead, Smith's declaration in support of his reply brief merely stated: "I worked with [counsel] carefully to make these recitations of fact completely

20

accurate and made sure that the final copy that was filed with the Court was completely true and correct." CP at 117. Accordingly, because Smith did not provide any supporting documentation and Northwest Motorsport provided evidence to dispute Smith's version of events, Smith's "recitations of fact" become a credibility determination. "[C]redibility determinations are for the trier of fact and are not subject to appellate review." *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 427, 204 P.3d 944, *review denied*, 166 Wn.2d 1037 (2009).

Smith's entire argument on appeal is centered on Northwest Motorsport's alleged failure to object to his reply brief filed in the superior court. However, Smith's assertion is belied by the record. The record shows that Northwest Motorsport filed an objection to Smith's reply brief and made an oral objection during the hearing. Thus, Smith's argument is unpersuasive.

The record shows that Northwest Motorsport did not engage in wrongful or oppressive conduct in negotiating the settlement agreement with Smith, it was Smith's lender who dictated the terms of his refinance, and Smith failed to provide any supporting documentation of his financial stress—or that such stress was caused by Northwest Motorsport. Given this record, Smith fails to demonstrate economic duress with clear, cogent, and convincing evidence. Therefore, the superior court did not err when it denied Smith's motion to vacate the settlement agreement.

B.     MOTION FOR RECONSIDERATION

1.     Legal Principles

On the motion of a party, a judgment may be vacated and the court may grant reconsideration of an issue in certain circumstances. CR 59(a). Those circumstances include

21

irregularities in court proceedings, misconduct, or newly discovered evidence, among other situations. CR 59.

We review denial of a motion for reconsideration for an abuse of discretion. *Constr. Loan Servs. II, LLC v. ECM Riverside, LLC*, 32 Wn. App. 2d 281, 291, 554 P.3d 1252 (2024). "A trial court abuses its discretion if its decision is 'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022) (quoting *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011), *review denied*, 173 Wn.2d 1029 (2012)).

2.      Motion for Reconsideration Properly Denied

Smith assigns error to the superior court's denial of his motion for reconsideration. However, Smith advances no argument as to how or why the superior court erred when it denied the motion. "Appellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Cook*, 158 Wn. App. at 794. Thus, we decline to review Smith's challenge.[12]

---

[12] We note that Smith relied on Pierce County Local Rules (PCLR) 7(c)(1), PCLR 7(c)(2), and PCLR 7(c)(3) for his motion for reconsideration. But PCLR 7 and its subsections are procedural rules specific to Pierce County Superior Court. PIERCE COUNTY SUPER. CT. LOCAL CIV. R. (PCLR) 7. The subsections cited by Smith did not provide any legal support for Smith's argument nor did Smith explain why the superior court should have reconsidered its ruling. PCLR 7(c)(1)-(3). Smith's motion did not once reference CR 59 or even allude to one of the possible circumstances that may justify reconsideration. Smith's argument in his motion for reconsideration is more or less a version of his argument on appeal—essentially, because Northwest Motorsport allegedly failed to object to Smith's reply brief, Smith prevails by default. For the reasons discussed above, this is neither accurate nor persuasive.

C.       SUPERIOR COURT'S AWARD OF ATTORNEY FEES TO NORTHWEST MOTORSPORT

Smith also challenges the superior court's award of attorney fees following its denial of the motion to vacate.  But Smith provides no argument regarding his challenge to the attorney fee award in either his opening brief or reply brief.

As stated above, "[a]ppellate courts need not consider arguments that are unsupported by pertinent authority, references to the record, or meaningful analysis." *Id.*  Thus, because Smith provides no argument, we decline to consider Smith's appeal of the attorney fee award.

D.       ATTORNEY FEES AND SANCTIONS ON APPEAL

Northwest Motorsport requests this court to award fees on appeal pursuant to RAP 18.1 and to sanction Smith and Smith's counsel pursuant to RAP 18.9.  We agree.

1.       Attorney Fees under RAP 18.1

Under RAP 18.1(a), we may award attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review."  Attorney fees may be "'authorized by contract, statute or recognized ground in equity.'"  *Dankievitch v. Lawrence*, 22 Wn. App. 2d 749, 761, 513 P.3d 804 (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 271, 138 P.3d 943 (2006)), *review denied*, 200 Wn.2d 1017 (2022).  Moreover, in any action on a contract where the contract provides for attorney fees, the prevailing party is entitled to attorney fees.  RCW 4.84.330.

Here, paragraph 3 of the settlement agreement stated:

The parties will execute a stipulation for dismissal of the Appeal . . . to Escrow, to be filed by Northwest Motorsport upon closing of the Refinance.  The parties agree to submit any other notices, stipulations, motions, or other paperwork necessary to terminate the Litigation.

CP at 30. The settlement agreement also contained a fee provision:

> In the event that any party or Released Party incurs attorney's fees or costs as a result of a breach of this Agreement, the non-breaching party or Released Party shall be entitled to recover such attorney's fees and costs from the breaching party.

CP at 61.

When Smith filed his stipulation to reject the voluntary withdrawal of the appeal, he breached his contract with Northwest Motorsport because Smith's motion was contrary to terminating the litigation, as required by paragraph 3. Thus, because the settlement agreement provides for an award of fees and because Northwest Motorsport is the prevailing party in this appeal, we award Northwest Motorsport attorney fees on appeal.

> 2.      Sanctions under RAP 18.9

RAP 18.9(a) provides that appellate courts may order a party or counsel who has filed a frivolous appeal to pay compensatory damages or to pay sanctions to the court. "'Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party.'" *Kinney v. Cook*, 150 Wn. App. 187, 195, 208 P.3d 1 (2009) (quoting *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849, *review denied*, 164 Wn.2d 1037 (2008)). "'[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.'" *In re Receivership of Applied Restoration, Inc.*, 28 Wn. App. 2d 881, 902, 539 P.3d 837 (2023) (alteration in original) (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980)), *review denied*, 3 Wn.3d 1012 (2024).

Smith's appeal is frivolous. Smith's opening brief is virtually devoid of any legal authority. Smith's opening brief provides only one legal citation—a citation to Washington Pattern Jury

Instructions: Civil 301.10, which sets forth the clear, cogent, and convincing burden of proof to invalidate a contract due to duress. Smith asserts that simply because he declared his statements were true, the superior court should have taken them as true despite the overwhelming evidence in the record, *including Smith's own e-mails*, that directly refutes his statements. Smith cites no authority supporting his proposition, nor does he cite *any* evidence in the record on appeal; rather, Smith only emphasizes his self-serving "factual recitations" to support his arguments on appeal.

Furthermore, Smith's conduct with Northwest Motorsport reflects what Smith himself has described as a "bait and switch." The record clearly shows that *he* proposed dropping his appeal and *he* accepted Northwest Motorsport's counteroffer. Then, *a full week later*, he signed the settlement agreement and a stipulation for voluntary withdrawal of the Appeal. Once Northwest Motorsport advised Smith that the stipulation and satisfaction of judgment had been filed with the courts, Smith filed his Motion to Vacate Settlement Agreement *less than two hours later*. Smith's Motion to Vacate Settlement Agreement is comprised of multiple pages with attached exhibits, which gives the distinct impression that his motion was prepared far more than an hour in advance of its actual filing. This evidence points to Smith engaging in a bait and switch with Northwest Motorsport. Such conduct is even more incredible in light of Smith's appeal to this court, wherein he accuses Northwest Motorsport of "string[ing] [him] along." Br. of Appellant at 10.

In addition to his violation of RAP 10.3, Smith also violated the rules of appellate procedure when he included two non-dispositive motions to strike evidence in his reply brief on appeal. RAP 17.4(d). In addition, as noted above, Smith misstated RAP 9.1 to this court. *See* RAP 9.1.

The fact that Smith has proceeded in such a manner, and under the guidance of an attorney, demonstrates a disrespect for the legal process. Thus, in addition to granting Northwest Motorsport attorney fees on appeal pursuant to RAP 18.1(a), we grant Northwest Motorsport's request for attorney fees on appeal as a sanction against both Smith and his counsel, jointly and severally, for a frivolous appeal.

## CONCLUSION

We affirm the superior court's order denying the motion to vacate the settlement agreement, order denying the motion for reconsideration, and award of attorney fees to Northwest Motorsport. And we award to Northwest Motorsport attorney fees on appeal, both under RAP 18.1(a) and as a sanction against both Smith and his counsel, jointly and severally, for a frivolous appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Price, J.

26